**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| McDAVID KNEE GUARD, INC., and STIRLING MOULDINGS LTD., | ) ) ) No. 08 CV 6584 |
| Plaintiffs, | ) ) |
| | ) District Judge Suzanne B. Conlon |
| v. | ) |
| | ) Magistrate Judge Michael T. Mason |
| NIKE USA, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge

Pending before this Court is plaintiffs' Motion to Disclose Certain Technical Information Designated Highly Confidential to David S. Taylor [41] ("motion"). For the reasons below, plaintiffs' motion is denied.

## Background

Plaintiffs McDavid Knee Guard, Inc. ("McDavid") and Stirling Mouldings Ltd. ("Stirling") (collectively "plaintiffs") have sued defendant Nike USA, Inc. ("Nike") for infringement of U.S. Patent Number 6,743,325 ("the '325 patent" or "the patent"). Plaintiffs allege that Nike imports foam padded products into the United States containing foam padding made in Taiwan by the method claimed in the '325 patent. According to plaintiffs, Finn Tech, Inc. ("Finn Tech"), a non-party to this litigation, manufactures foam padding using the accused method protected by the '325 patent and supplies that padding to Nike.

On 12/18/08, Judge Conlon entered the parties' Stipulated Protective Order [25]. Among other things, that order differentiates between information designated "Confidential" and information designated "Highly Confidential." David S. Taylor, the inventor of the '325 patent and Stirling's Managing Director, is specifically included among those eligible to review Confidential Information under ¶11 of the order, but not among those eligible to review Highly Confidential Information under ¶12.

A "Confidentiality Undertaking" signed by Mr. Taylor on 4/2/09 states that he understands that "unauthorized disclosure of any Designated CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION, or its substance, may constitute contempt of this Court and may subject me to sanctions or other remedies that may be imposed by the Court and to potential liability in a civil action for damages by the disclosing party." (Ex. 5 to Mot. [41-6].) Mr. Taylor also states in the Undertaking that he lives in England, and has designated an attorney at plaintiffs' counsel's firm as "his Illinois agent for service of process in connection with this litigation and any proceedings related to enforcement of the Stipulated Protective Order." (*Id.*)

The Stipulated Protective Order allows any party "on motion and for good cause shown" to seek a modification of the order's terms (¶25). It also provides that a party receiving Highly Confidential Information may move the Court for an order that a person not identified in ¶12 be given access to Highly Confidential Information (¶13(B)).

As part of their efforts to establish infringement by Nike of the '325 patent, plaintiffs have served various discovery requests on Nike regarding the processes actually used by Finn Tech. Additionally, plaintiffs have sought documents from Finn Tech, deposed its president, Daniel Kim, and served a subpoena on Mr. Kim personally,

as Finn Tech's president, seeking an inspection of the processes used in Finn Tech's factory in Taiwan. (Reply at 3, 4.)

Relying on Finn Tech's representations, Nike has stated in its interrogatory responses that Finn Tech used one manufacturing method before December 25, 2008, and a different method thereafter. (Ex. B to Reply at 2 [49-2].) Finn Tech, in response to plaintiffs' requests, initially produced a video showing only the post-December 25, 2008 process as well as a document prepared by Mr. Kim's attorney explaining that process, and marked those documents Highly Confidential. (Reply at 3.) Finn Tech's attorney also agreed to allow plaintiffs' litigation counsel to make a restricted video inspection of Finn Tech's manufacturing process at its Taiwan factory. That offer was premised on the condition that all information and materials disclosed during that inspection would be designated Highly Confidential and limited to attorneys' eyes only under the Stipulated Protective Order. (*Id.* at 4; Ex. A to Decl. of Bub-Joo Lee, attached to Opp'n [47-14, 47-15].) That inspection occurred in April 2009.

**Plaintiffs' Motion**

In their motion, plaintiffs seek leave to designate Mr. Taylor as an expert witness on infringement and invalidity in this case and to disclose to him technical information designated Highly Confidential. (Mot. at 1.) Plaintiffs would limit the scope of Highly Confidential Information made available to Mr. Taylor to technical information only, that is, "documents directed to the accused method(s) practiced by Finn Tech." (Mot. at 3.) The technical information plaintiffs seek to show Mr. Taylor would include the video and whatever other information was gleaned from plaintiffs' litigation counsel's in-person inspection of Finn Tech's Taiwan factory in April. (Reply at 7.)

3

Plaintiffs contend that, as the inventor of the subject matter in the '325 patent and with nearly 10 years of "extensive experience in the field of manufacturing foam padding," Mr. Taylor is the "most knowledgeable person" regarding the invention of the patent and its technology. (*Id.* at 1-2.) Plaintiffs argue that Mr. Taylor's expertise is "vital to the evaluation" of plaintiffs' infringement claims, including the decision of whether to settle or proceed with this litigation. (*Id.* at 3.)

Plaintiffs argue that the Stipulated Protective Order, as well as Mr. Taylor's signing of the Confidentiality Undertaking, sufficiently protect Finn Tech from any harm, as those documents prohibit the disclosure of any confidential information to unauthorized persons, and thus "Stirling will be prevented from adopting the accused second method, because Mr. Taylor cannot tell anyone else at Stirling about it." (Mot. at 3.) Plaintiffs contend their right to disclose relevant information to Stirling's in-house expert "outweighs Nike's interest in protecting the confidentiality of its supplier's manufacturing method." (*Id.* at 4.) Plaintiffs also maintain they will be prejudiced in their trial preparation if they cannot use Mr. Taylor as an expert witness. (*Id.*)

In Nike's and Finn Tech's opposition to the motion [47], they point out that Mr. Taylor is a "competitive decision maker for Plaintiff Stirling," and argue that the potential harm to Nike and Finn Tech's competitive interest in Finn Tech's "confidential, technical and trade secret information" greatly outweighs any purported need to give Mr. Taylor access to that information. (Opp'n at 1.) Nike and Finn Tech point out that Stirling manufactures pads in direct competition with Finn Tech and supplies those pads to garment maker McDavid, a direct competitor of Nike. (*Id.* at 2.) They also note that Mr. Taylor is actively involved in current prosecution of the reissue application for the '325

4

patent as well as other Stirling patents.  (*Id.*)  Nike and Finn Tech argue that Mr. Taylor's use of Finn Tech's competitive information in Stirling's manufacturing processes or in drafting claims or otherwise prosecuting Stirling's patents "would destroy any competitive advantage that Nike and Finn Tech possess in the Finn Tech process." (*Id.*)  Nike and Finn Tech submitted the affidavit of Mr. Kim, Finn Tech's president, in support of these arguments.  (Decl. of Daniel Kim, attached to Opp'n [47-13].)

Nike and Finn Tech point out that plaintiffs have already hired outside technical experts with the expertise plaintiffs claim to need from Mr. Taylor and have provided "extensive infringement contentions in response to Nike's discovery, including a detailed analysis of the protected Finn Tech process that they now seek to disclose to Mr. Taylor."  (Opp'n at 3, 4-5.)  They also state that evaluating whether Finn Tech's process performs the "simple steps recited in Plaintiffs' asserted patent does not require any special technical expertise," and that plaintiffs have not presented any evidence or argued that their patent lawyers or outside technical experts cannot apply these "simple claims" and "simple steps" in this case.  (*Id.*)

Additionally, Nike and Finn Tech maintain that Mr. Taylor's Confidentiality Undertaking does not sufficiently protect them because he could not be presumed to "compartmentalize and suppress" the knowledge he would glean from Nike and Finn Tech's Highly Confidential Information, no matter how well-intentioned he might be. (Opp'n at 3.)  They also contend that because Mr. Taylor is a foreigner residing in England, he is outside this Court's jurisdiction.  Thus, according to Nike and Finn Tech, any recourse against him for violating the Stipulated Protective Order would be "at best

difficult if not unacceptably limited." (*Id.*)

Finally, Nike and Finn Tech argue plaintiffs should not be allowed to "reneg" on the agreement they made with Finn Tech to gain access to the Highly Confidential Information they now seek to disclose to Mr. Taylor and have "waived" any objections to Finn Tech's restrictions on that information by proceeding with the inspection. (Opp'n at 6, 7.) Nike and Finn Tech contend plaintiffs specifically agreed under Stipulated Protective Order not to include Mr. Taylor among those with access to Highly Confidential Information. They also maintain that, in order to get expedited discovery in Taiwan, plaintiffs agreed that information from the restricted video inspection of Finn Tech's manufacturing process would be designated Highly Confidential and limited to "attorneys' eyes only." (*Id.* at 6.) Finn Tech states it relied on plaintiffs' agreement before allowing the factory inspection, and otherwise would have required plaintiffs follow discovery procedures in Taiwan. (*Id.*)

In their reply [49], plaintiffs state that Mr. Taylor "is an officer (*i.e.,* a Managing Director) of the Plaintiff, Stirling, and is designated as Stirling's representative." (Reply at 1.) Plaintiffs argue that under Fed. R. Evid. 615, Mr. Taylor will not be excluded from trial and thus will hear the testimony of other witnesses, including those testifying as to the process(es) used by Finn Tech. (*Id.*) Plaintiffs also contend it is "unlikely" that the Court will close the courtroom and seal the record regarding the accusing infringing process at issue in this action. (*Id.*) They also maintain that because Mr. Taylor has signed the Confidentiality Undertaking, the suggestion that he could successfully challenge the jurisdiction of the Court in the event he violates the Stipulated Protective Order "has no legal merit." (*Id.* at 6.)

Additionally, plaintiffs argue that Nike and Finn Tech have not met their burden of establishing what Finn Tech's alleged trade secret is, or that irreparable harm would result if members of the public became aware of it. (Reply at 1-2.) Plaintiffs contend that Finn Tech's process may be protected apart from the Stipulated Protective Order, and that information regarding that process may become public in the future. (*Id.* at 5, 8.) Plaintiffs' argument is based, among other things, on deposition testimony that has been designated "Highly Confidential" under the Stipulated Protective Order (*id.*), an excerpt of which plaintiffs filed under seal with the Court as an exhibit to their reply (Ex. H to Reply). As a result, this Court will not detail the specifics of that argument here.

Finally, plaintiffs argue that their current request does not mean they are "reneging" on their agreement to abide by the Stipulated Protective Order. Rather, plaintiffs maintain they "are merely requesting modification" of the order "for the limited purpose of allowing Mr. Taylor to view the accused method so that Plaintiffs can pursue this litigation with the input of their in-house expert and inventor of the '325 patent." (*Id.*) Plaintiffs assert that "Taiwanese law of inspection was not contemplated or discussed by the parties' attorneys" in conjunction with their agreement regarding the April inspection of Finn Tech's Taiwan factory. (*Id.* at 4.) Plaintiffs also point out that the Protective Order allows for modification and for a party to move for an order to give a person not listed in ¶12 access to Highly Confidential Information. (*Id.* at 6-7.)

**Discussion**

The decision whether to modify a protective order is left to the discretion of the District Court. *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978). Fed. R. Civ. P. 26(c) provides that a protective order may be entered only upon a showing of "good cause" by the party seeking the order. The parties do not dispute that good cause supported the District Court's issuance of the Stipulated Protective Order in the first instance.

While Rule 26(c) does not state who bears the burden on a motion to modify a protective order, ¶25 of the parties' Stipulated Protective Order provides that the party seeking modification of the order bears that burden.[1] Resolution of the pending motion requires a balancing of the policy of full disclosure of relevant information and plaintiffs' right to disclose relevant information to one of their chosen expert witnesses, against Nike and Finn Tech's interest in protecting Finn Tech's information from unnecessary disclosure to competitors. For the reasons discussed below, this Court finds that plaintiffs have not established that "good cause" warrants the order's modification to allow Mr. Taylor access to the Highly Confidential Information at issue.

Based on the submissions to this Court, we are not convinced that plaintiffs will be impeded in their task of forming an infringement opinion if they are precluded from discussing Finn Tech's technology with Mr. Taylor. Plaintiffs' litigation counsel, outside experts, and Mr. Taylor will undoubtedly discuss the scope of the '325 patent.

---

[1] Because ¶25 of the order expressly contemplates that a party may move for its modification, Nike and Finn Tech's argument that plaintiffs have waived any objections to Finn Tech's restrictions on disclosing information from the April 2009 Taiwan factory inspection is not persuasive.

8

Additionally, as Nike and Finn Tech note, plaintiffs have hired outside technical experts who have provided infringement contentions. And while Finn Tech apparently required information gathered during the Taiwan factory inspection be designated Highly Confidential and restricted to "attorneys' eyes only," plaintiffs do not argue that Nike or Finn Tech currently refuse to allow plaintiffs' *outside experts* to review such information. Plaintiffs have not sought an order allowing disclosure of that information to their outside experts. Most importantly, plaintiffs do not submit any evidence, such as a declaration from their outside experts, demonstrating that the inability to discuss Finn Tech's process in detail with Mr. Taylor will appreciably handicap plaintiffs' ability to formulate an infringement opinion or consider settlement. Instead, plaintiffs rely solely on their litigation counsel's statements in their motion and reply to support the "critical" nature of Mr. Taylor's advice. Such statements are insufficient to meet plaintiffs' burden. *See Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir.2002) ("[I]t is universally known that statements of attorneys are not evidence.").

Additionally, this Court believes that Nike and Finn Tech have demonstrated the competitively sensitive nature of the information at issue, as well as the potential competitive harm that could result from its disclosure. According to the declaration of Mr. Kim, Finn Tech's president, Finn Tech's method of manufacturing the foam pads used by Nike is a trade secret. Mr. Kim also declares that disclosure of that method to any of Finn Tech's competitors would put Finn Tech "at considerable risk that Stirling or others within the industry will use Finn Tech's proprietary process." As noted above, plaintiffs seek to disclose to Mr. Taylor "documents directed to the accused method(s) practiced by Finn Tech," including the video and other information gleaned from the

9

April inspection of Finn Tech's Taiwan factory.  Stirling and Finn Tech directly compete with one another in the manufacture of foam padding.  McDavid and Nike directly compete in the manufacture and sale of garments containing that padding.  Mr. Taylor's position at Stirling would make it extremely difficult for him to "compartmentalize and selectively suppress," on the one hand, information regarding Finn Tech's processes he might review to advise plaintiffs' litigation counsel, from, on the other hand, his potential use of that information in connection with Stirling's business operations and patent activities.  *See Doskocil Cos. v. C&F Packing Co.*, No. 89 C 600, 1989 U.S. Dist. LEXIS 14071, \*\*4-5, 9 (N.D. Ill. Nov. 17, 1989) (Holderman, J.) (denying, for similar reasons, a party's officer/patent inventor access to information regarding the opposing party's technology) (*quoting FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)).  As a result, at this time, we see no need to alter the status quo established by the Stipulated Protective Order.

In reaching this conclusion, we need not – and do not – decide whether Finn Tech has established as a matter of law that its processes actually constitute a trade secret.  Indeed, it would be inappropriate for this Court to make any determination concerning a potentially dispositive issue, given the procedural posture of the motion pending before us as well as the scope of the District Court's referral.  Additionally, this Court cannot speculate as to whether, as plaintiffs argue, Finn Tech's process may be protected apart from the Stipulated Protective Order, or whether information regarding that process may become public at some point in the future.  Such speculation is particularly inappropriate where plaintiffs do not cite any legal authorities in support of those contentions.

We also note that the decision in *Minnesota Mining & Mfg. v. Smith & Nephew PLC*, No. 3-91-274, 1992 U.S. Dist. LEXIS (D. Minn. June 23, 1992) ("*3M*"), relied on by plaintiffs, is not applicable here. In *3M*, plaintiff's employee/co-inventor of two patents-in-suit, to whom plaintiff sought to disclose defendants' confidential technical information, was no longer employed by plaintiff's product division that implicated those patents. *Id.* at *5. The court found this fact "tipped the scale" toward disclosure, as this fact, along with the employee's consent to the terms of the parties' protective order, provided defendants with "adequate assurance" that she "would not consciously or unconsciously apply" defendants' technology while working on projects for plaintiff. *Id.* The court also found that plaintiff demonstrated its "genuine need" for its employee's expertise in connection with the litigation by plaintiff's willingness to restrict her from ever again working in the product division implicating the patents. *Id.* at *6. The dispositive facts of *3M* are simply too dissimilar to justify the relief sought by plaintiffs' here.

Finally, we express no opinion regarding plaintiffs' arguments that Finn Tech's processes will eventually be disclosed to Mr. Taylor and the public generally at trial (Reply at 1), except to note that those arguments are not persuasive in the context of the present motion. We do not have jurisdiction over the issue of witness sequestration at trial or whether at trial the courtroom ought to be closed or the record sealed. Similarly, this Court expresses no opinion as to whether Mr. Taylor, assuming he is allowed to attend trial, should be permitted to testify regarding his understanding of Finn Tech's processes after hearing testimony or other evidence presented regarding those processes. Those issues are for the District Court to decide.

**Conclusion**

For the reasons above, plaintiffs' Motion to Disclose Certain Technical Information Designated Highly Confidential to David S. Taylor [41] is denied.

ENTERED:

_____
**MICHAEL T. MASON
United States Magistrate Judge**

**DATED: June 09, 2009**