IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| McDAVID KNEE GUARD, INC., an Illinois corporation, and STIRLING MOULDINGS LIMITED, an English corporation | ) Civil Action No.: 08 CV 6584 ) ) Judge James F. Holderman ) ) Magistrate Judge Mason |
| Plaintiffs, | ) ) |
| v. | ) ) |
| NIKE USA, INC., an Oregon corporation, | ) ) |
| Defendant. | ) |

**<u>DEFENDANT NIKE USA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION</u>**

**<u>FOR LEAVE TO FILE SECOND AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 1

    A. The Allegations in Plaintiffs' Complaint and Amended Complaint ...................... 1

    B. Progress on the Merits ............................................................................................ 2

    C. Fact Discovery Deadlines ....................................................................................... 3

III. THE COURT SHOULD REJECT PLAINTIFFS' MOTION BECAUSE IT SEEKS TO ADD FUTILE CLAIMS .................................................................. 4

    A. McDavid's Proposed Copyright Claim Is Futile .................................................... 4

        1. McDavid Cannot Assert its Unregistered Copyright ................................. 4

        2. Even if McDavid Could Assert Copyright Infringement, Nike's Pro Combat Advertisements Would Not Infringe ......................... 5

    B. McDavid's Proposed Trademark Claim Is Likewise Futile ................................... 7

        1. McDavid's Hexagon Trademark is Limited to a Logo--Not a Repeating Pattern of Hexagons ............................................................... 8

        2. McDavid Does Not Possess Common Law Trademark Rights to a Repeating Pattern of Hexagons ....................................................... 9

        3. McDavid Fails to Allege Secondary Meaning ........................................... 9

    C. Nike's Pro Combat Ads Do Not Use a Hexagon-Shaped Pattern; Nor is Nike's Pattern Used as a Trademark ........................................................ 10

IV. JUSTICE DOES NOT FAVOR FURTHER AMENDMENT ............................................. 12

    A. Plaintiffs' New Proposed Causes of Action Lack a Common Nexus With the Original Causes of Action ..................................................................... 12

    B. Further Amendment Would Prejudice Nike, Require Substantial Additional Discovery and Delay Resolution ........................................................ 13

V. CONCLUSION .................................................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES**

*Allen v. Destiny's Child*,
  No. 06 C 6606, 2009 U.S. Dist. LEXIS 63001 (N.D. Ill. July 21, 2009) ..................... 5

*Atari Games Corp. v. Oman*,
  979 F.2d 242 (D.C.Cir.1992) ................................................................................. 5

*AutomobileZone, Inc. v. Strick*,
  543 F.3d 923 (7th Cir. 2008) ................................................................................ 10

*Automation By Design, Inc. v. Raybestos Products Co.*,
  463 F.3d 749 (7th Cir. 2006) .................................................................................. 5

*Celebration International, Inc. v. Chosun International, Inc.*,
  234 F. Supp. 2d 905 (S.D. Ind. 2002) .................................................................... 6

*DuPage Forklift Serv., Inc. v. Machinery Distribution, Inc.*,
  No. 94 C 7357, 1995 U.S. Dist. LEXIS 15693 (N.D. Ill. Oct. 19, 1995) ................... 13

*FurstPerson, Inc. v. Iscopia Software, Inc.*,
  No. 09 C 1814, 2009 U.S. Dist. LEXIS 82520 (N.D. Ill. Sept. 10, 2009) ............... 4, 5

*Guess ?, Inc. v. Nationwide Time, Inc.*,
  16 U.S.P.Q. 2d 1804 (T.T.A.B. Sept. 27, 1990) ...................................................... 8

*Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*,
  326 F.3d 687 (6th Cir. 2003) ................................................................................ 11

*Jackson v. Intel Corp.*,
  No. 09 C 2178, 2009 U.S. Dist. LEXIS 78991 (N.D. Ill. Aug. 31, 2009) ................... 4

*Mississippi Ass'n of Coops. v. Farmers Home Admin.*,
  No. 90-1601 (HHG), 1991 U.S. Dist. LEXIS 16769 (D.D.C. Oct. 4, 1991) ........ 12, 13

*Murphy v. Murphy*,
  No. 04 C 3496, 2007 U.S. Dist. LEXIS 11865 (N.D. Ill. Feb. 15, 2007) ................... 6

*O'Leary v. Mira Books*,
  No. 08 CV 08, 2008 U.S. Dist. LEXIS 81421 (N.D. Ill. Aug. 18, 2008) .................... 7

*Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*,
  No. 02 C 2523, 2003 U.S. Dist. LEXIS 21544 (N.D. Ill. Nov. 26, 2003) ................. 14

*Oravec v. Sunny Isles Luxury Ventures, L.C.*,
 527 F.3d 1218 (11th Cir. 2008) ..........................................................................7

*Sato v. Peterson*,
 No. 92 C 7048, 1995 U.S. Dist. LEXIS 10093 (N.D. Ill. July 19, 1995) ...................12

*Segal v. Geisha NYC LLC*,
 517 F.3d 501 (7th Cir. 2008) ...............................................................................11

*Smithkline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*,
 No. 00 C 2855, No. 00 C 5831, 2002 U.S. Dist. LEXIS 10633 (N.D. Ill. June 12, 2002) .........................................................................................14, 15

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
 121 S. Ct. 1255 (2001) .........................................................................................9

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,
 338 F.3d 127 (2d Cir. 2003) .................................................................................5

*Vargas-Harrison v. Racine Unified Sch. District*,
 272 F.3d 964 (7th Cir. 2001) ................................................................................4

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*,
 529 U.S. 205 (2000) ............................................................................................10

**STATUTES**

15 U.S.C. § 1114(1)(a) ..................................................................................................10

35 U.S.C. § 271(g) ........................................................................................................1

17 U.S.C. § 411(a) ........................................................................................................4

Fed. R. Civ. P. 15(a)(2) ................................................................................................12

### I.      INTRODUCTION

This Court should deny Plaintiffs' Motion for Leave to File a Second Amended Complaint for two reasons.  First, McDavid's proposed copyright and trademark claims are futile.  Because the copyright McDavid asserts in its advertisement is not registered, the Court would have to dismiss this claim for lack of subject matter jurisdiction.  Even if McDavid could bring this claim, it would fail because the *only* alleged similarity (among myriad stark differences) between the parties' advertisements relates to a non-protectable aspect of McDavid's advertisement.  As to its proposed trademark claim, McDavid seeks to assert a narrow three-hexagon logo trademark against the padding pattern found in Nike's Pro Combat products.  The law does not permit McDavid to extend the scope of its logo trademark to the functional padding pattern employed by Nike.

Second, justice does not favor amendment here because McDavid's proposed copyright and trademark claims are unrelated to the existing causes of action.  Adding these claims would only result in undue prejudice to Nike and the public because it would delay the resolution of this case, would significantly expand the scope of discovery (which even after two extensions closes in a few weeks), and would burden Nike and the Court with additional, meritless causes of action.  Accordingly, Plaintiffs' motion should be denied.

### II.     BACKGROUND

#### A.     The Allegations in Plaintiffs' Complaint and Amended Complaint

Plaintiffs filed suit against Nike in November 2008 for alleged infringement of the Stirling Patent. (Docket No. 1).  The Stirling Patent claims a method of making foam pads. (Ex. A to Docket No. 1)  Plaintiffs allege that Nike's supplier employs the claimed method in making pads incorporated into Nike's Pro Combat products.  Plaintiffs therefore accused Nike of infringement under 35 U.S.C. § 271(g).

1

On May 28, 2009, Plaintiffs filed an unopposed motion to amend their complaint to add four additional claims involving violation of the Consumer Fraud Act, violation of the Illinois Uniform Deceptive Trade Practices Act, violation of the common law of tortuous interference with prospective business advantage, and violation of Section 43(a) of the Lanham Act (unfair competition). (Docket Nos. 55-56). All of the facts pled in support of these new claims involved Nike's alleged false statements to Nike-sponsored schools that under the terms of their exclusive sponsorship agreements, they are required to use Nike's Pro Combat products and not McDavid's HexPad products. (Docket No. 56). The Amended Complaint makes no mention of alleged trademark or copyright infringement or any of the underlying acts as plead in Plaintiffs' proposed Second Amended Complaint.

### B.   Progress on the Merits

On September 17, 2009, this Court issued its Order construing disputed terms in the Stirling Patent claims. (Docket No. 137). Specifically, this Court held that a critical element of the disputed claims – the presence of a jig – should be defined as "a device or tool that is different from the material on which the manufacturing work is performed that holds the elements created by the patented manufacturing process in the correct position during the manufacturing process." *Id.* at 9. In reaching this conclusion the Court found that the excess foam material in Nike's supplier process could not qualify as a "jig". *Id.* at 6. Thus, this Court's construction of "jig" is fatal to Plaintiffs' patent infringement claims.

At the status conference on September 22, 2009, McDavid's counsel informed the Court that it was considering stipulating to entry of denial of its motion for preliminary injunction so that it could put this case in position for appeal on the claim construction order. Because McDavid had added several non-patent claims, the question was whether McDavid would withdraw those claims or stipulate to summary judgment. As part of that discussion, Nike provided McDavid's counsel with the details of Nike's planned summary judgment motion against the non-patent claims. Only after that, did McDavid raise the Pro

2

Combat commercials and the possibility of a trademark claim. *See* Ex. A to the Declaration of Alyson G. Barker In Support of Nike's Opposition to Plaintiffs' Motion for Leave to Amend ("Barker Decl.").

Further, despite this Court's *Markman* Order, McDavid did not abandon its pending motion for preliminary injunction or stipulate to non-infringement but instead filed a supplemental brief in support of its motion for preliminary injunction and argued that the excess foam in the Finn Tech process "literally [is] a jig." (Docket No. 141-1 at 6). McDavid's statement completely contradicts and ignores this Court's claim construction and Plaintiffs' expert went so far as to testify that he is not required to follow this Court's claim construction ruling. (Docket No. 149, Transcript of Second Deposition of Glenn Beall, October 21, 2009 at 7:8-21).

    C.    **Fact Discovery Deadlines**

The Court's original case scheduling order set the cut-off date for fact and expert discovery for November 15, 2009. (Docket No. 32). On July 24, 2009, the case was reassigned to Chief Judge Holderman (Docket No. 123) and on September 29, 2009, the Court issued a revised case schedule setting the deadline for fact discovery for November 30, 2009. (Docket No. 140). On November 9, 2009, Plaintiffs filed a motion to extend fact discovery by two months because Plaintiffs contended that their counsel was having difficulty reviewing Nike's document production within the scheduled time period. (Docket No. 150). On November 12, 2009, this Court granted Plaintiffs' motion in part and agreed to extend fact discovery by three weeks setting the new deadline for December 18, 2009. (Docket No. 157). Plaintiffs filed the present motion on November 16, 2009 and their reply to Nike's opposition is due on November 30, 2009; a mere three weeks before the fact discovery deadline which has already been extended on two earlier occasions. (Docket No. 150).

### III. THE COURT SHOULD REJECT PLAINTIFFS' MOTION BECAUSE IT SEEKS TO ADD FUTILE CLAIMS

The Court should deny leave to amend because McDavid seeks to add futile claims. *See Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 975 (7th Cir. 2001); *see also Jackson v. Intel Corp.*, No. 09 C 2178, 2009 U.S. Dist. LEXIS 78991, at *3 (N.D. Ill. Aug. 31, 2009) ("if the amended complaint would not survive a motion to dismiss, the Court does not abuse its discretion by dismissing with prejudice.").

#### A. McDavid's Proposed Copyright Claim Is Futile

##### 1. McDavid Cannot Assert its Unregistered Copyright

McDavid's proposed copyright infringement claim is futile because McDavid does not own a copyright registration for the work that is the basis of its claim. As such, McDavid cannot bring suit on its alleged copyright because the Court would lack subject matter jurisdiction over it. 17 U.S.C. § 411(a); *FurstPerson, Inc. v. Iscopia Software, Inc.*, No. 09 C 1814, 2009 U.S. Dist. LEXIS 82520, at **10-11 (N.D. Ill. Sept. 10, 2009) (dismissing claim on unregistered copyright for lack of subject matter jurisdiction).

Specifically, McDavid's Second Amended Complaint alleges that the basis of its copyright claim is a poster entitled "Fear No Evil, D. Wade," created by Capacitor Design Network "prior to October 31, 2007," and purportedly assigned to McDavid on October 28, 2009 ("McDavid Poster"). (Docket No. 159-3, ¶¶ 68-69). McDavid alleges that it filed an application to register the copyright in the poster on October 30, 2009. *Id.* at 70; Exhibit G. But by its own admission, the copyright application for the poster has not yet been approved, or registered, by the U.S. Copyright Office.[1] Plaintiffs' action for alleged copyright infringement is therefore improper: "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or *registration of the copyright claim has been made*. . . ." 17 U.S.C. § 411(a) (emphasis added). Further,

---

[1] Plaintiffs' Exhibit G is an unauthenticated printout of McDavid's electronic filing application for the Dwayne Wade poster dated October 30, 2009.

4

both this Court and the Seventh Circuit have confirmed that it is not enough that a plaintiff merely file an application to register a copyright before the lawsuit. Instead, the plaintiff must *own* a registration issued by the U.S. Copyright Office. *See Automation By Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753 n.1 (7th Cir. 2006) (stating that "[r]egistration is not a condition of copyright protection, but is necessary before an infringement suit may be filed in court"); *FurstPerson*, 2009 U.S. Dist. LEXIS 82520, at **10-11 (granting motion to dismiss copyright infringement claim because the plaintiff did not yet own a copyright registration). Accordingly, the Court would have to dismiss McDavid's copyright claim. Thus, that claim is futile and leave should not be given to bring it.

### 2. Even if McDavid Could Assert Copyright Infringement, Nike's Pro Combat Advertisements Would Not Infringe

Even if McDavid could assert copyright infringement, Nike's Pro Combat ads do not infringe because the alleged copied portion—the hexagon pattern in the McDavid poster—is not a proper subject for copyright protection, nor does McDavid's copyright provide it with exclusive rights to a hexagon pattern. *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 132 (2d Cir. 2003) (cautioning that "standard geometric forms" are not copyrightable because they are in the public domain); *Atari Games Corp. v. Oman*, 979 F.2d 242, 247 (D.C.Cir.1992).

Further, to the extent that McDavid alleges that something more than the pattern was copied, it must demonstrate substantial similarity as a whole between the Pro Combat advertisements and the McDavid Poster. To determine substantial similarity, the Court should consider "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Allen v. Destiny's Child*, No. 06 C 6606, 2009 U.S. Dist. LEXIS 63001, at *22 (N.D. Ill. July 21, 2009). A simple comparison of a representative sample of Nike's Pro Combat

5

DM_US:22934736_5

advertisements with McDavid's Dwayne Wade poster readily reveals that the two ads (shown below) are not substantially similar.[2]

 

Nike's Pro Combat products are the dominant focus of Nike's ads, whereas the winged athlete Dwayne Wade is the dominant focus of McDavid's ad.  The ads use different athletes, shot in different poses, with different lighting, angles, effect and themes.  McDavid's ad is in color and Nike's is black-and-white, McDavid's ad features a basketball and Nike's ad is related to football apparel.  McDavid's ad also incorporates the slogan "Fear No Evil" and McDavid's brand name and trademark versus Nike's ad which incorporates the brand name "Nike Pro Combat" and the famous Nike swoosh.  Indeed, the only similarity that Plaintiffs allege is that the athletes in both ads have scales superimposed on their skin.  But scales on skin are not entitled to copyright protection because they are lifelike and even if they were, the two ads are not substantially similar in protected expression.  *See Celebration Int'l, Inc. v. Chosun Int'l, Inc.,* 234 F. Supp. 2d 905, 917 (S.D. Ind. 2002) (limiting copyright protection to the portion of the tiger that has particular expression and not the portion that is lifelike); *see also Murphy v. Murphy*, No. 04 C 3496, 2007 U.S. Dist. LEXIS 11865, at **11-12 (N.D. Ill. Feb. 15, 2007) (no

---

[2] This is true for all of the Pro Combat print ads, and even more so for Nike's Pro Combat television commercial featuring Adrian Peterson.

infringement where the only arguably similar elements were not entitled to copyright protection because they involved real life facts and ideas). Nike's scales are oval or circular in shape and McDavid's are shaped like hexagons. Thus, Nike's Pro Combat ads cannot infringe McDavid's alleged copyright, and McDavid's copyright claim must fail. *See O'Leary v. Mira Books*, No. 08 CV 08, 2008 U.S. Dist. LEXIS 81421, at *7 (N.D. Ill. Aug. 18, 2008) (granting motion to dismiss where the accused work was not substantially similar to the copyrighted work).

McDavid's argument that copyright protection for an entire work translates into a cause of action for copyright infringement against Nike for the use of a single non-protectable concept (scaled skin) is simply untenable because a finding of substantial similarity on a conceptual level would be an implicit finding than an idea is copyrightable. *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1227 (11th Cir. 2008) (declining to grant copyright protection to the concept of a convex/concave pattern on a building).

### B. McDavid's Proposed Trademark Claim Is Likewise Futile

Plaintiffs' proposed trademark claim[3] alleges that a repeating pattern of shapes digitally imposed on the skin of athletes in Nike's Pro Combat advertisements infringes McDavid's registered trademark. As a matter of law, McDavid's registered trademark does not cover anything other than a specifically-arranged three hexagon logo. It does not cover the pattern used in McDavid's padded sports products, and certainly does not extend to Nike's. Moreover, there can be no likelihood of confusion as to the source of Nike's products given the ubiquitous use of Nike's famous "swoosh" mark and name on all Pro Combat advertising.

---

[3] McDavid's proposed trademark claim, as pled, is based entirely on its registered trademark under Section 1114 and not on common law trademark or trade dress theories.

1.  **McDavid's Hexagon Trademark is Limited to a Logo--
    Not a Repeating Pattern of Hexagons**

McDavid's trademark registration, which is the sole basis of its Section 1114 claim, is limited to a specific arrangement of three hexagons in a triangular shape (shown below). McDavid claims to use this logo in connection with pads, braces, and various apparel products.



Such an arrangement of geometric shapes is narrowly construed under U.S. trademark law. *Guess ?, Inc. v. Nationwide Time, Inc.*, 16 U.S.P.Q.2d 1804 (T.T.A.B. Sept. 27, 1990) (common geometric shapes, such as a triangle, are accorded a narrow scope of protection, both as to product line and variation in design). McDavid's registration does not support or suggest that the scope of its mark should extend beyond the three hexagon-shaped symbol above, certainly not to cover a generic honeycomb / scaled pattern superimposed on human skin—it does not function as a trademark.

During prosecution of McDavid's trademark, McDavid limited the scope of its mark to overcome the U.S Patent & Trademark Office's ("USPTO") rejection of the application based on concerns that it was likely to cause confusion with a mark that incorporated an *identical* logo, Reg. No. 2,386,947 for surfing related clothing (shown below).



McDavid overcame this rejection by arguing that there would not be a likelihood of confusion because: (1) the Channel Islands mark is used on connection with surfing

related goods, and (2) the Channel Islands mark also features the prominent wording of the name "Channel Islands." *See* Ex. B to Barker Decl. Thus, on the one hand, McDavid acknowledged that it may co-exist with the *identical logo,* used a trademark by another company, yet it seeks to assert that logo against Nike's use of scaled skin in advertisements. (McDavid does not accuse any Nike products of trademark infringement.)

McDavid acknowledged before the USPTO that its rights did not extend to the three hexagon-shaped pattern separate and apart from connection with its specific apparel products because others, including Channel Islands, were already using the three hexagon-shaped symbol, and this Court should not permit McDavid to now claim broader rights in its mark.

### 2. McDavid Does Not Possess Common Law Trademark Rights to a Repeating Pattern of Hexagons

McDavid does not own any trademark registration for a repeating pattern of hexagon shaped symbols. To the extent that McDavid is trying to claim common law trademark rights to such a pattern present on the padded portion of its HexPad products, that claim would also fail. The shape of the repeating hexagon-shaped pattern on the padded portion of McDavid's HexPad products is functional[4] and therefore not protectable under trademark law. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 121 S. Ct. 1255, 1259 (2001).

### 3. McDavid Fails to Allege Secondary Meaning

Even if McDavid could overcome the functional aspects of the repeating pattern of hexagons on the padded portions of its HexPad products, the pattern would still be ineligible for common law trademark protection because McDavid has not alleged that this pattern has acquired secondary meaning. Proof of secondary meaning is required to assert

---

[4] The Stirling Patent emphasizes the functional nature of this pattern as providing for flexibility "in all directions without 'locking up' or preventing movement in a particular direction." Stirling Patent at 2:44-51 (Docket No. 1, Ex. A).

9

infringement of an unregistered product configuration. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000) ("We hold that, in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning."). Because Plaintiffs' Second Amended Complaint fails to allege secondary meaning, none of the trademark related claims in Plaintiffs' Second Amended Complaint would cover Nike's alleged use of a repeating pattern of hexagon-shaped images on an athletes' skin. These claims are therefore futile as well.

  **C.**  **Nike's Pro Combat Ads Do Not Use a Hexagon-Shaped Pattern; Nor is Nike's Pattern Used as a Trademark**

  In order to prove trademark infringement, the holder of a registered trademark must establish that another's imitation of the mark "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a); *see also AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) (explaining that "the similarity between the marks in appearance and suggestion," is particularly important to a likelihood of confusion analysis). Thus, even if Plaintiffs could establish that McDavid had a registered trademark or common law trademark right to a repeating pattern of hexagon-shaped images, Plaintiffs' trademark claims would fail because as the Court can readily see in the image below, Nike's Pro Combat advertisements do not use hexagons. Instead, Nike's Pro Combat advertisements use an oval-shaped image digitally imposed on athletes' skin to mimic the same oval shape of the padded elements used in their Pro Combat products, also shown in the ads.[5]

---

[5] The screen shot here is taken from a full length, full motion commercial, and when viewed in full speed consumers would not scrutinize it at anything close to this level of detail.



Because the images on the athletes' skin are ovals or circular in appearance and are not hexagons, there is no likelihood of confusion between Nike's advertisements and McDavid's alleged trademark rights. Moreover, Nike's use of oval-shaped images super-imposed on an athlete's skin is not akin to trademark use, meaning that consumers will not view these images as a designation of the "source" of Nike's Pro Combat products. *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,* 326 F.3d 687, 695 (6th Cir. 2003) ("If defendants are only using [plaintiff's] trademark in a 'non-trademark' way – that is, in a way that does not identify the source of a product – then trademark infringement and false designation of origin laws do not apply."). Rather, consumers will look to the actual product that the athletes are wearing in Nike's ad, Nike's Pro Combat product, and will also see the presence of the Nike trademark and swoosh logo and will know that the actual product is a Nike product and not McDavid's product.

Tellingly, Plaintiffs' Second Amended Complaint does not accuse the actual source - Nike's Pro Combat products - of infringing McDavid's alleged trademark because there is no likelihood of confusion between the oval shape used for the padded elements in Nike's product and the hexagon shape used for the padded elements in McDavid's product. In short, McDavid does not have trademark rights covering the use of a repeating pattern of hexagon-shaped images and even if it did, the images used in Nike's advertisements are not hexagons, do not qualify as trademark use and are not likely to cause consumer confusion. *See Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008) (affirming

11

district court's order granting motion to dismiss plaintiff's trademark claim because there was no confusion as to source).

Given the futility of the claims McDavid seeks to add to the complaint, the Court should deny Plaintiffs' motion for leave to amend.

### IV. JUSTICE DOES NOT FAVOR FURTHER AMENDMENT

Under Rule 15, the Court should freely permit Plaintiffs' amendment if "justice so requires." Fed. R. Civ. P. 15(a)(2). That is not the case here. Plaintiffs' motion seeks to unfairly transform and expand this case, which is now ripe for disposition in view of the Court's claim construction and the impending close of the already twice-extended fact discovery period.

#### A. Plaintiffs' New Proposed Causes of Action Lack a Common Nexus With the Original Causes of Action

Justice does not require leave to amend when the causes of action sought to be added are not substantively related to the original complaint. *See, e.g., Sato v. Peterson*, No. 92 C 7048, 1995 U.S. Dist. LEXIS 10093, at *31 (N.D. Ill. July 19, 1995) (denying plaintiff's motion to amend because it would have expanded the case from a straight forward tax case into a complex case involving alleged claims of discrimination). McDavid already transformed this case from a straightforward patent infringement case into an amorphous unfair competition case based on what McDavid alleges were "false" statements made to Nike-sponsored schools. Only after Nike shared with McDavid its plan for moving for summary judgment on the non-patent claims, and the basis for showing that Nike's alleged "false" statements were actually true, did McDavid start raising its proposed trademark and copyright claims. Accordingly, the Court should not grant leave to amend in this case because leave to amend is "not, . . . a process of metamorphosis." *Mississippi Ass'n of Coops. v. Farmers Home Admin.*, No. 90-1601 (HHG), 1991 U.S. Dist. LEXIS 16769, at * 8 (D.D.C. Oct. 4, 1991).

12

Here, McDavid seeks to cause further unnecessary metamorphosis by injecting new trademark and copyright claims, neither of which is based on the alleged acts of patent infringement or false statements complained of in the existing complaint. Given that McDavid can bring these new claims in a separate action, justice does not require that the Court permit McDavid to overcomplicate the present case with a belated amended complaint. Indeed, courts have explained that it is unnecessary to reach the issue of prejudice to the non-moving party where the proposed amended complaint is so unrelated to the original cause of action as to have no substantive connection to the original pleading. *See id*. at ** 8-10. This is because, as the court in *Mississippi* explained, the moving party is not prejudiced because "it is free to bring the proposed amended complaint as a separate, new action." *Id*. at *8.

### B. Further Amendment Would Prejudice Nike, Require Substantial Additional Discovery and Delay Resolution

Plaintiffs' present motion falls hard on the heels of the Court's rejection of Plaintiffs' bid to extend fact discovery into 2010. Plaintiffs motion appears designed to obtain an additional extension of the current fact discovery deadline because, if granted, Plaintiffs' Second Amended Complaint would require significant additional discovery. This would further delay resolution of the present case and resulting in undue prejudice to Nike. *See DuPage Forklift Serv., Inc. v. Machinery Distribution, Inc.*, No. 94 C 7357, 1995 U.S. Dist. LEXIS 15693, at **3-5 (N.D. Ill. Oct. 19, 1995). Plaintiffs' Second Amended Complaint would require extensive discovery on wholly new causes of action. This would likely include extensive written discovery requests as well as depositions of party and non-party witnesses, none of which can be completed before the already twice-extended discovery cutoff of December 18, 2009.

Because Plaintiffs' Motion comes so close to the end of fact discovery and because this Court has already resolved claim construction and will soon resolve Plaintiffs' motion for preliminary injunction, Nike would be prejudiced if the case is further delayed. *See*

13

*Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 C 2523, 2003 U.S. Dist. LEXIS 21544, at **10-11, 17 (N.D. Ill. Nov. 26, 2003). Although Plaintiffs' Second Amended Complaint does not propose to add new parties like in *Ocean Atlantic*, extensive discovery has already taken place and the parties would need to start from scratch on Plaintiffs' new allegations of copyright and trademark infringement.

Notably, Nike has already completed its 30(b)(6) depositions of McDavid's witnesses and only has two remaining depositions to take of McDavid's sales representatives. If Plaintiffs' Motion were granted, Nike would need to take an additional 30(b)(6) deposition and would likely need to re-depose some of McDavid's witnesses, namely Messrs. Fee and McDavid, on issues related to alleged copyright and trademark infringement. In addition, Nike would likely have to depose several additional fact witnesses, including the third-party developer of McDavid's Dwayne Wade poster, Capacitor Design Network, LLC.

Further, even though Plaintiffs have served document subpoenas on the third-parties that developed Nike's Pro Combat advertisements, (Motion at ¶ 19 (citing Ex. 5)), all of the third-parties have objected to Plaintiffs' subpoenas as seeking documents unrelated to the present case. *See* Ex. C to Barker Decl. If Plaintiffs' Motion is granted, the third-parties would have to collect documents responsive to the subpoenas and may be subject to deposition. Of the three non-parties that Plaintiffs subpoenaed, only one is located near Nike in Portland, Oregon and none of them are located near Illinois. *Id.* Further, Plaintiffs have already explained that Capacitor Design Network, LLC is located in Vermont, (Docket No. 159-3 at ¶ 68), far from Plaintiffs, Nike, and this Court, thereby requiring increased travel for all. Accordingly, this discovery would take a significant amount of time and would necessarily require an additional extension to the current fact discovery deadline, thereby resulting in prejudice to Nike. *See Smithkline Beecham Corp. v. Pentech Pharms., Inc.*, No. 00 C 2855, No. 00 C 5831, 2002 U.S. Dist. LEXIS 10633, at **11-14 (N.D. Ill. June 12, 2002).

14

Moreover, Plaintiffs' Second Amended Complaint would likely also result in a delay to the current deadline for expert discovery. Both Plaintiffs and Nike would likely need to obtain copyright and trademark experts. And both parties might need to hire someone to conduct a survey addressing Plaintiffs' claims of alleged trademark infringement. This would take a considerable amount of time resulting in further undue prejudice to Nike. *See id.*

## V. CONCLUSION

The claims Plaintiffs seek to add to this case are futile. In addition, these claims do not arise from a nucleus of operative fact common with the existing claims. The addition of those claims also would unduly expand discovery and delay resolution of the case. Nike therefore respectfully requests that the Court deny Plaintiffs' motion.

DATED: November 23, 2009          Respectfully submitted,

          /s/ Alyson G. Barker
William C. Rooklidge (*Pro Hac Vice*)
rooklidgew@howrey.com
Russell B. Hill (*Pro Hac Vice*)
hillr@howrey.com
Alyson G. Barker (*Pro Hac Vice*)
barkera@howrey.com
HOWREY LLP
4 Park Plaza, Suite 1700
Irvine, CA 92614-8557
Telephone: 949/721-6900
Facsimile: 949/721-6910

Steven Yovits (Bar No. 5257262)
yovitss@howrey.com
HOWREY LLP
321 North Clark Street, Suite 3400
Chicago, IL 60654-4717
Telephone: 312/595-1239
Facsimile: 312/595-2250

*Attorneys for Defendant Nike USA, Inc.*

## **CERTIFICATE OF SERVICE**

This will certify that a copy of the foregoing **DEFENDANT NIKE USA, INC.'S OPPOSITION TO PLAINTIFFS MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** was caused to be filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*Parties receiving service electronically are as follows:*

>Karl R. Fink
>John F. Flannery
>Paul B. Henkelmann
>FITCH, EVEN, TABIN & FLANNERY
>120 South LaSalle Street, Suite 1600
>Chicago, IL 60603
>Telephone: 312/577-7000
>Facsimile: 312/577-7007
>E-mail: krfink@fitcheven.com
>jfflan@fitcheven.com
>phenkelmann@fitcheven.com

This 23rd day of November, 2009

>/s/ Alyson G. Barker
>*Attorneys for Defendant Nike USA, Inc.*