IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MCDAVID KNEE GUARD, INC., and STIRLING MOULDINGS LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | 08 CV 6584 |
| v. | ) ) | |
| NIKE USA, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

JAMES F. HOLDERMAN, Chief Judge:

Plaintiffs McDavid Knee Guard, Inc. and Stirling Mouldings Limited (collectively "McDavid") initiated this action against defendant Nike USA, Inc. ("Nike") on November 17, 2008, alleging that the process of producing Nike's "ProCombat" product line infringed U.S. Patent No. 6,743,325 ("'325 Patent"). On September 17, 2009, this court issued its claim construction opinion construing the disputed claim terms in the '325 Patent. Although McDavid initially indicated to the court that it was considering stipulating to entry of a denial of its Motion for Preliminary Injunction based on the court's claim construction, McDavid ultimately decided to pursue its Motion for Preliminary Injunction, which this court has denied today in a separate opinion. McDavid's "Motion for Leave to File Second Amended Complaint" (Dkt. No. 159) to add previously unalleged copyright and trademark infringement claims and to supplement its existing unfair competition claims is currently before the court. For the reasons explained below, McDavid's motion is denied.

## BACKGROUND

When McDavid on November 17, 2008 filed its initial one-count complaint against Nike in this case, McDavid alleged that Nike was importing a product line of foam padded shorts manufactured in Taiwan by a process that infringed U.S. Patent No. 6,743,325 ("'325 Patent"). On June 3, 2009, District Judge Suzanne B. Conlon, who was the then presiding judge in this case, granted McDavid's motion to file a First Amended Complaint, which added McDavid's allegations of various unfair competition claims based on Nike's allegedly false statements to certain colleges and universities. (Dkt. No. 74.) Specifically, McDavid alleged that Nike falsely told these colleges and universities that under their supply agreements with Nike, they could not purchase athletic foam padded compression girdles (which Nike sells as part of its "ProCombat" product line) from a manufacturer other than Nike. (1st Am. Compl., attached as Ex. 1 to Dkt. No. 56.)

Following, this court issued its September 17, 2009 claim construction opinion construing the disputed terms in the '325 Patent. After first considering stipulating to entry of a denial of its Motion for Preliminary Injunction which would allow McDavid to seek appellate review of the court's claim construction ruling, McDavid instead decided to continue to pursue its Motion for Preliminary Injunction based on what McDavid claimed was a new patent infringement theory. The court has denied McDavid's Motion for Preliminary Injunction today in a separate opinion.

Currently before this court is McDavid's "Motion for Leave to File Second Amended Complaint" (Dkt. No. 159) to add copyright and trademark infringement claims and supplement its unfair competition claims. The proposed amendments and supplementation relate to Nike's advertising campaign for its "ProCombat" line which began on or around September 2009. (*See* Ex.

2

D to 2d Am. Compl., attached as Ex. 1 to Dkt. No. 167, Pls.' Reply.) As stated above, for the reasons explained below, McDavid's motion is denied.

## ANALYSIS

I. **McDavid's Motion to File a Second Amended Complaint**

Under Federal Rule of Civil Procedure 15(a), after the period for amending as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The Federal Circuit applies the law of the regional circuit, here the Seventh Circuit, to motions to amend the pleadings under Rule 15(a). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009).

In the Seventh Circuit, the district court may deny a motion to amend "if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In this case, the court finds that McDavid's proposed amendments are futile and likely to unduly prejudice Nike. McDavid's requested amendment, therefore, will not be allowed.

A. **Futility**

Nike argues that both McDavid's trademark and copyright infringement claims are futile, and the court agrees. According to the Seventh Circuit, "[a] new claim is futile if it would not withstand a motion to dismiss." *Vargas-Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001). Additionally, because a motion to amend the complaint is "addressed to the discretion of the district court," the motion "requires more to compel acceptance than the fact that

3

the pleading sought to be added states a claim." *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996).

### 1. McDavid's Proposed Trademark Infringement Claims

In its proposed trademark infringement claims, McDavid alleges that Nike's "ProCombat" advertisements infringe McDavid's trademark, which consists of three hexagons positioned in a triangular shape. (*See* Ex. B to 2d Am. Compl., attached as Ex. 1 to Dkt. No. 167, Pls.' Reply.) Specifically, McDavid contends that "the hexagon pattern displayed on the athletes' skins in the Nike advertisements . . . is confusingly similar to McDavid's registered Hexagon mark." (Dkt. 159, Pls.' Mot. Leave File Second Am. Compl. 5.)

To prove trademark infringement, McDavid must establish that Nike's use of its mark "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Trademark infringement, however, "is only actionable when a mark is likely to confuse an *appreciable* number of people as to the source of the product." *Nautilus Group, Inc. v. Icon Health & Fitness, Inc.*, 372 F.3d 1330, 1339 (Fed. Cir. 2004) (citations and internal quotations omitted). Thus, "[i]f defendants are only using [plaintiff's] trademark in a 'non-trademark' way–that is, in a way that does not identify the source of a product–then trademark and false designation of origin laws do not apply." *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003); *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610-11 (6th Cir. 2009) (affirming district court's dismissal of trademark infringement claim where complaint failed to "allege facts sufficient to show that [defendant's] use of the [plaintiff's mark] creates a likelihood of confusion as to the source of its products").

4

In this case, even assuming that McDavid's trademark rights cover the use of a repeating hexagon pattern, which this court does not decide, the court finds that Nike's advertisements do not employ McDavid's trademark as a source identifier. To the contrary, Nike's name is prominently displayed on the accused advertisements, thereby preventing any consumer confusion as to the source of the "ProCombat" products. (*See* Exs. C-E to 2d Am. Compl., attached as Ex. 1 to Dkt. No. 167, Pls.' Reply; Pl.'s Reply at Ex. 2.)

Moreover, although McDavid characterizes the scales in Nike's advertising as a "hexagon pattern," the court finds that the decorative scales are oval, rather than hexagon shaped, and mirror the repeating oval pattern in Nike's Pro-Combat padding. Consequently, the court finds that Nike's "ProCombat" advertisements are not likely to confuse an appreciable number of people as to the source of the products, and, as a result, McDavid's trademark claims are futile. *See Interactive Prods.*, 326 F.3d at 695; *Hensley Mfg.*, 579 F.3d at 610-11.

### 2. McDavid's Proposed Copyright Infringement Claims

In its proposed copyright infringement claims, McDavid alleges that Nike's "ProCombat" advertisements infringe its copyright in a poster entitled "Fear No Evil, D. Wade" ("Poster") (attached as Ex. F to Dkt. No. 159, Pls.' Mot. Leave File Second Am. Compl.) To prove copyright infringement, McDavid must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "Copying may be inferred where the 'defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work.'" *Id.* at 1011 (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)). In

5

assessing substantial similarity, the court considers "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Id.* (quoting *Atari,* 672 F.2d at 614).

Although courts historically reserve questions of substantial similarity for the jury, *see Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1247 (7th Cir. 1999), where, as here, "no reasonable jury, properly instructed, could find that the two works are substantially similar," the court may determine substantial similarity as a matter of law, *id. See also Theotokatos v. Sara Lee Personal Prods.*, 971 F. Supp. 332, 340 (N.D. Ill. 1997) ("Where . . . both the protected and accused works are attached to the complaint, a court may compare the works and determine as a matter of law whether they are substantially similar with respect to copyrightable material."); *Tillman v. New Line Cinema*, 87 U.S.P.Q.2d 1293 (N.D. Ill. 2008) (finding on summary judgment that two works were not substantially similar).

In this case, having reviewed McDavid's copyrighted Poster and Nike's accused advertisements, the court finds that no reasonable person could conclude that the works are substantially similar. Nike's advertisements are in black-and-white, while the Poster is in color. Unlike the Nike advertisements, which focus on football apparel, McDavid's Poster prominently displays the winged-athlete Dwayne Wade holding a basketball. McDavid's Poster also includes the slogan "Fear No Evil" and the name "DWADE" in its center and the McDavid brand name and trademark in the lower left-hand corner. Nike's advertisements, on the other hand, conspicuously display the "Nike ProCombat" brand name and either the Nike name or the Nike swoosh mark. (*See* Exs. C-F to 2d Am. Compl., attached as Ex. 1 to Dkt. No. 167, Pls.' Reply; Pls.' Reply at Ex. 2.)

6

The only discernible similarity between the works is the decorative scales superimposed on the athletes' bodies. As discussed above, however, the scales have different shapes: Nike's scales are oval while McDavid's are hexagon shaped. In light of the significant differences between the works, the court finds that the mere use of scales on the athletes' bodies is insufficient to render them substantially similar. *See T-Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 112-13 (1st Cir. 2006) ("If the points of dissimilarity not only exceed the points of similarity, but indicate that the remaining points of similarity are, within the context of plaintiff's work, of minimal importance, either quantitatively or qualitatively, then no infringement results." quoting 4 Nimmer & Nimmer, *Nimmer on Copyright* § 13.03(B)(1)(a) (2006)).

Consequently, based on the lack of substantial similarity, the court finds that McDavid's proposed copyright infringement claim also is futile.

### B. Prejudice

The court further finds that allowing McDavid to amend its complaint will unduly prejudice Nike. "Undue prejudice occurs when the amendment brings in entirely new and separate claims . . . or at least entails more than an alternative claim or a change in the allegations in the complaint and when the additional discovery is expensive and time-consuming." *Jacobs v. Xerox Corp. Long Term Disability Plan*, 520 F. Supp. 2d 1022, 1046 (N.D. Ill. 2007) (quoting *In re Ameritech Corp.*, 188 F.R.D. 280, 283 (N.D. Ill. 1999)) (internal quotations omitted).

Contrary to McDavid's contention that its "proposed claims arise from the same factual circumstances as the existing unfair competition claims" (Dkt. No. 167, Pls.' Reply 10), the court finds that these amendments are new, unrelated claims connected only by their tangential relationship to Nike's "ProCombat" product. McDavid based its original unfair competition claims

7

solely on Nike's allegedly false representations to various colleges and universities. McDavid's proposed amendments, however, add unrelated claims regarding whether Nike's "ProCombat" *advertisements* infringe McDavid's trademark and copyright rights.

Moreover, fact discovery closed on December 18, 2009 and already was twice extended by this court: first to provide McDavid additional time to supplement its original preliminary injunction motion (Dkt. No. 140), and second to assist McDavid's counsel in reviewing Nike's document production (Dkt. No. 154). The court finds that requiring Nike to now respond to new allegations of copyright and trademark infringement would necessitate yet another extension of the discovery deadlines and likely require additional expert discovery. Because this additional discovery would be expensive and time-consuming, the court finds that allowing McDavid's requested amendments would be unduly prejudicial to Nike.

## II. Supplement to McDavid's Unfair Competition Claims

In its motion, McDavid also moves to supplement its pending unfair competition claims, including its claims under section 43(a) of the Lanham Act, 15 U.S.C. § 1125; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1; and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1. Specifically, McDavid seeks to add allegations related to Nike's recent "ProCombat" advertisements.

Federal Rule of Civil Procedure 15(d), which governs supplemental pleadings, provides: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The Rule 15(a) standard for motions to amend the pleadings also applies to Rule 15(d) motions to supplement the pleadings. *Glatt v. Chicago Park*

*Dist.*, 87 F.3d 190, 194 (7th Cir. 1996). In this case, the court finds that supplementation would be futile and is likely to unduly prejudice Nike.

### A. Futility

First, as McDavid correctly recognizes, the key issues regarding its unfair competition and trademark competition claims is the same, i.e., whether Nike's advertisements create a likelihood of confusion. *See D56, Inc. v. Berry's Inc.*, 955 F. Supp. 908, 920 (N.D. Ill. 1997). As discussed above, however, the court does not find that Nike's use of decorative oval shaped scales on the athletes' bodies in its advertisements is likely to cause confusion as to the source or origin of Nike's "ProCombat" products. *See Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003) ("If defendants are only using [plaintiff's] trademark in a 'non-trademark' way–that is, in a way that does not identify the source of a product–then trademark and false designation of origin laws do not apply."); *see also* 15 U.S.C. § 1125 (a)(1)(A). Nor do the Nike advertisements suggest that the "ProCombat" products are affiliated with or sponsored by McDavid. *See* 15 U.S.C. § 1125(a)(1)(A). Consequently, the court finds that supplementing McDavid's unfair competition claims to add allegations related to Nike's "ProCombat" advertisements would be futile.

### B. Prejudice

Second, as discussed above, McDavid's original unfair competition claims solely addressed Nike's allegedly false statements to certain colleges and universities that under their supply agreements with Nike they were not allowed to purchase foam padded compression girdles from other manufacturers, such as McDavid. McDavid's supplemental pleadings, however, involve Nike's allegedly misleading "ProCombat" advertisements. The court finds that the allegations in McDavid's proposed supplementation are unrelated to its existing unfair competition claims, and,

9

as a result, McDavid's reliance on *Intrepid v. Pollock*, 907 F.2d 1125 (Fed. Cir. 1990), which found that supplementation was appropriate when "the later events [were] *directly related* to the averments" in the original complaint, *id.* at 1129 (emphasis added), is misplaced. Consequently, McDavid's supplementation raises a completely new basis for its unfair competition claims, and the court finds that allowing this supplementation would prejudice Nike by requiring additional and potentially expensive discovery, further delaying resolution of this litigation.

Given the current posture of this case and the court's issued decision to deny McDavid's Motion for Preliminary Injunction based in part on McDavid's failure to demonstrate a likelihood of success on the merits, the court is particularly hesitant to allow McDavid to raise new, unrelated claims and expand this litigation at this post-discovery stage. As the Seventh Circuit aptly explained, "[P]leading is not like playing darts: a plaintiff can't keep throwing claims at the board until [it] gets one that hits the mark." *Doe v. Howe Military Sch.*, 227 F.3d 981, 990 (7th Cir. 2000). Moreover, as discussed above, the court finds that McDavid's proposed amendments and supplementation are futile and likely to unduly prejudice Nike. As a result, McDavid's "Motion for Leave to File Second Amended Complaint" (Dkt. No. 159) is denied.

## **CONCLUSION**

For the reasons stated above, McDavid's "Motion for Leave to File Second Amended Complaint" (Dkt. No. 159) is denied. The case is set for a report on status at 9:00 a.m. on February 11, 2010. The parties are again encouraged to discuss settlement.

ENTERED    JANUARY 14, 2010

*James F. Holderman*
_____
James F. Holderman
Chief Judge, United States District Court