IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MCDAVID KNEE GUARD, INC., and STIRLING MOULDINGS LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | 08 CV 6584 |
| v. | ) ) | |
| NIKE USA, INC., | ) ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

JAMES F. HOLDERMAN, Chief Judge:

McDavid Knee Guard and Stirling Mouldings Limited (collectively "McDavid") filed

this lawsuit against Nike USA, Inc. ("Nike"), asserting claims for patent infringement and

violations of the Lanham Act and various other state unfair competition laws. Currently before

the court is Nike's "Motion for Summary Judgment of All Causes of Action" (Dkt. No. 179

("Nike's Mot.")). In a separate opinion issued today, the court has granted McDavid's "Motion

for Leave to File Second Amended Complaint" (Dkt. No. 253), which replaces originally

asserted U.S. Patent No. 6,743,325 with the recently issued Reissue Patent No. RE41,346.

Accordingly, this opinion is limited to McDavid's non-patent unfair competition claims against

Nike. For the reasons explained below, the court grants Nike's motion for summary judgment as

to each of McDavid's non-patent unfair competition claims.

BACKGROUND

Both Nike and McDavid sell "padded compression shorts," also referred to as "padded girdles," which athletes wear to prevent injuries.  (Dkt. No. 207 (" McDavid's Opp.") at 8-9; Dkt. No. 208 ("Pls.' Local R. 56.1(b)(3) Resp.") ¶ 9.)  Nike has exclusive supplier agreements with several colleges and universities, whereby Nike is the exclusive supplier of athletic competition apparel for those schools.  (Pls.' Local R. 56.1(b)(3) Resp. ¶¶ 39-40.)  On or around October 2008, "Nike informed personnel connected with teams at certain universities that have agreements with Nike that the team members were not allowed to use McDavid foam padded girdles under the terms of their agreements with Nike."  (Dkt. No. 88, Answer Am. Compl. ¶ 27.)[1]

Based on these statements to certain colleges and universities, McDavid amended its complaint to assert claims against Nike under the Lanham Act, 15 U.S.C. § 1125 (Count V), the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count II), and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (Count III), in addition to a claim for tortious interference with prospective business advantage under Illinois law (Count IV).  (Dkt. No. 56, Ex. 1; *see also* Pls.' Local R. 56.1(b)(3) Resp. ¶¶ 31, 33.)  Nike has moved for summary judgment on each of these claims.

LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[1]  At least one of these statements appears to have been communicated via an email message from Nike's Senior Merchandising Manager, Alec Mattison, to personnel at one of Nike's partner colleges.  (Dkt. No. 210, Ex. O to Henkelman Decl.; *see also* Dkt. No. 210, Ex. F to Henkelman Decl., Mattison Dep. 56:9-57:2, Dec. 17, 2009.)

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In

assessing whether summary judgment is appropriate, the court must view the evidence in the

light most favorable to the non-moving party and draw all reasonable inferences in its favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

ANALYSIS

I.      Count V–Lanham Act Claim

Section 43(a) of the Lanham Act establishes civil liability for false or deception

advertising:

> Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which--
> . . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another person's
> goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is
> or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

According to the Seventh Circuit,[2] a claim for false or deceptive advertising under the

Lanham Act requires proof of the following elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about
> its own or another's product; (2) the statement actually deceived or has the
> tendency to deceive a substantial segment of the audience; (3) the deception is
> material, in that it is likely to influence the purchasing decision; (4) the defendant
> caused its false statement to enter interstate commerce; and (5) the plaintiff has
> been or is likely to be injured as a result of the false statement, either by direct

---

[2] The Federal Circuit, which has jurisdiction over this patent case, applies the law of the
regional circuit for claims under the Lanham Act. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581
F.3d 1317, 1329 (Fed. Cir. 2009).

diversion of sales from itself to defendant or by a loss of goodwill associated with
its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

In this case, Nike argues that it is entitled to summary judgment on McDavid's Lanham

Act claim because (1) Nike's statements interpreting the exclusive supply agreements were not

false statements of fact and (2) Nike's representations to the colleges and universities do not

constitute "commercial advertising or promotion" under the Lanham Act. The court will address

each of Nike's arguments in turn.

A.      Nike's Statements Regarding the Supply Agreements Were Not False Statements
        of Fact

Focusing on § 43(a)'s requirement that the accused statements are false, Nike argues that

the terms of the exclusive supply agreements actually do prohibit the colleges and universities

from purchasing padded girdles from McDavid. Thus, Nike submits, its representations were

true and not actionable under the Lanham Act. McDavid, on the other hand, contends the

agreements are ambiguous as to whether the colleges and universities were required to purchase

padded girdles from Nike rather than McDavid. According to McDavid, this ambiguity creates

"a genuine issue of material fact as to the scope of the Agreements" which in turn creates a

genuine issue of material fact as to the falsity of Nike's statements, thus precluding entry of

summary judgment. (McDavid's Opp. at 12.)

At the outset, the court notes that although the parties focus their arguments on their

conflicting interpretations of the exclusive supplier agreements, neither party has identified any

contract interpretation principles for the court nor explained which state's law applies to interpret

the various agreements. Nevertheless, the court finds that it need not interpret the agreements to

determine that Nike's representations to the colleges and universities regarding their obligation

to purchase Nike's padded girdles under the exclusive supplier agreements were not false or misleading statements of fact under the Lanham Act.

Statements violating the Lanham Act "generally [fall] into one of two categories: (1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Hot Wax*, 191 F.3d at 820. Statements of opinion, however, "are not generally actionable under the Lanham Act." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *see also Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495-96 (5th Cir. 2000) ("Essential to any claim under section 43(a) of the Lanham Act is a determination of whether the challenged statement is one of fact–actionable under section 43(a)–or one of general opinion–not actionable under section 43(a).").

Furthermore, a determination of whether a statement is actionable under the Lanham Act also requires considering the statement in context and with reference to its audience. *See Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009) ("[T]he meaning of the alleged literal falsehood must be considered in context and with reference to the audience to which the statement is addressed."); *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 392 (8th Cir. 2004) (considering " the context in which the phrase is used" to determine whether phrase was a statement of fact); *Pizza Hut*, 227 F.3d at 495 n.5 ("When construing the allegedly false or misleading statement to determine if it is actionable under section 43(a), the statement must be viewed in the light of the overall context in which it appears."); *Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986) ("Fundamental to any task of interpretation is the principle that text must yield to context."). In this case, the accused statements consist of an interpretation of Nike's exclusive supplier

5

agreements which was conveyed to personnel at the colleges and universities that are parties to those agreements.

Although the court's research has not identified any Seventh Circuit case law directly addressing the applicability of § 43(a) of the Lanham Act to such statements, the court finds that *Coastal Abstract Service, Inc. v. First American Title Insurance Co.*, 173 F.3d 725 (9th Cir. 1999), and *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir. 1996), are persuasive authority indicating that a layman's statements expressing an interpretation of a contractual agreement are opinions which are not actionable under the Lanham Act. In *Coastal Abstract*, one of the accused statements involved the defendant's representation that, under the California Financial Code, the plaintiff, an escrow agent, needed a license to perform its refinancing activities. At the time the defendant made its statement, neither a court nor a relevant administrative agency had determined whether the identified California regulation applied to the plaintiff's activities. *Coastal Abstract*, 173 F.3d at 731. The Ninth Circuit held that under such circumstances, the accused statement was one of opinion, not fact: "Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact." *Id.* at 731.

Similarly in the *Dial A Car* case, the statement at issue involved the defendant taxi company's representation to its customers that its taxicabs were legally authorized to provide corporate account services, i.e., "on-call, point-to-point transportation billed on a contract, rather than a tariff, basis," in Washington D.C. 82 F.3d at 485. According to the plaintiff, this representation was false because an order promulgated by the D.C. Taxicab Commission Office prohibited regular taxicabs, like those used by the defendant, from providing corporate account

services.  As in *Coastal Abstract*, at the time the representations were made, the D.C. Taxicab Commission had not yet determined whether using regular taxicabs to provide corporate account services actually violated the Commission's order.  *Id.* at 488.  Finding that the regulation at issue was "ambiguous with regard to the legality of [the defendant's] activity," the D.C. Circuit explained that it "certainly [could not] say that the regulation was so clear as to be a *fact* for Lanham Act purposes."  *Id.* at 489 n.3 (emphasis added).  Moreover, even if the Commission eventually addressed the legality of the defendant's conduct, the D.C. Circuit found that such a ruling would be irrelevant; instead, "the proper inquiry is whether the law was unambiguous *at the time* [*the defendant's*] *alleged misstatements were made*."  *Id.* at 489 (emphasis in original).

Here, although the statements at issue involve the interpretation of a contract rather than a statute or regulation, this court does not find that this distinction warrants a different result in this case.  Like statutory interpretation, interpretation of an unambiguous contract generally is a matter of law for the court, *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 880 (7th Cir. 2005) (quoting *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999)), as is the determination of whether a contract is ambiguous, *Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) (quoting *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 214 (Ill. 2004)).[3]  Both parties continue to dispute whether the agreements at issue prohibit the contracting colleges and universities from purchasing padded girdles from McDavid, and McDavid has not presented any evidence that the pertinent terms of the exclusive supplier agreements have been previously

---

[3]  Neither party has identified which state's law applies to interpret the agreements.  For purposes of this motion, the court assumes that Illinois law applies.  *See Santa's Best Craft, L.L.C. v. St. Paul Fire & Marine Ins.*, 2010 WL 2605874, at *3 (7th Cir. July 1, 2010) ("No party raises a choice of law issue and therefore . . . we apply the law of the forum state . . . .").  Because the court is only relying on general common law contract principles, it does not believe that the choice of law affects the outcome.

interpreted by a court.

Moreover, McDavid, in its attempt to create a genuine issue of material fact to survive summary judgment, notably concedes that Nike's exclusive supplier agreements are ambiguous as to whether the contracting colleges and universities are allowed to purchase padded girdles from McDavid. Although the ambiguity of a contract's terms ultimately is a matter of law for the court to decide, *see Curia*, 587 F.3d at 829, the court finds that this admission of ambiguity is significant. Rather than creating a factual dispute as McDavid intends, by conceding that the relevant terms are ambiguous, McDavid confirms that the meaning of the contract's terms was and remains undecided. As a result, viewing the facts in the light most favorable to McDavid, the court cannot reasonably infer that the statements interpreting the exclusive supplier agreements are statements of fact. The court recognizes that in some cases the terms of an agreement may be so clear that a statement regarding those terms would constitute a verifiable statement of fact under the Lanham Act. In this case, however, where the plaintiff concedes that the relevant terms of an agreement are ambiguous, the court finds that a statement interpreting that agreement is not a fact but an opinion which is not actionable under the Lanham Act.

B.      Nike's Statements Were Not Made in "Commercial Advertising or Promotion"

Additionally, even if the court were to find that the statements of Nike's representatives qualified as statements of fact, the court agrees with Nike that McDavid has failed to prove that the statements were made in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). The Seventh Circuit has narrowly defined "commercial advertising or promotion" under the Lanham Act, explaining that the term is not coextensive with commercial speech under the First Amendment. *See First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001). Instead, "[a]dvertising is a form of promotion to anonymous recipients, as distinguished

from face-to-face communication." *Id.* at 803. Based on this understanding of commercial advertising, the Seventh Circuit has expressly recognized that "letters sent to customers do not come within the scope of § 43(a)(1)(B)–which is limited to false or misleading 'commercial advertising or promotion' and does not cover all deceitful business practices." *ISI Int'l, Inc. v. Borden Ladner Gervais L.L.P.*, 316 F.3d 731, 733 (7th Cir. 2003). Nor do statements by "executives and lawyers, made over a conference table in an effort to negotiate a contract" fall within the boundaries of "commercial advertising or promotion" under the Lanham Act. *First Health*, 269 F.3d at 804.[4]

In this case, the court finds that Nike's personal communications to the colleges and universities with which Nike already had an existing exclusive supplier agreement are analogous to letters to consumers or person-to-person communications which the Seventh Circuit has already deemed insufficient to prove false or deceptive advertising under the Lanham Act. Consequently, Nike is also entitled to summary judgment on McDavid's Lanham Act claim because McDavid has failed to prove that the accused statements occurred in "commercial advertising or promotion."


II.     Count II–Illinois Consumer Fraud Act Claim and Count III–Illinois Uniform Deceptive
        Trade Practices Act Claim

Both McDavid and Nike agree that McDavid's claims under the Illinois Consumer Fraud Act and the Illinois Uniform Deceptive Trade Practices Act also require a showing that the defendant made a false statement of fact in a commercial advertisement, (Nike's Mem. 12;

---

[4] To the extent that this Seventh Circuit precedent conflicts with the district court opinions cited by McDavid, many of which pre-date *ISI International* and *First Health*, (*see* McDavid's Opp. 12-13), the court declines to rely on that non-precedential authority.

McDavid's Opp. 12), and the judges in this district appear to agree that "the legal inquiry is the same under the Lanham Act as under the Consumer Fraud Act and the Deceptive Trade Practices Act," *see, e.g., BlueStar Mgmt. L.L.C. v. Annex Club, L.L.C.*, 2010 WL 2802213, at *8 (N.D. Ill. July 12, 2010) (Gettleman, J.) (quoting *MJ & Partners Rest. Ltd. v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) (Moran, J.)). Because McDavid cannot prove that the identified statements are false statements of fact under the Lanham Act, the court accordingly finds that Nike is entitled to summary judgment on McDavid's claims under the Illinois Consumer Fraud Act and the Illinois Uniform Deceptive Trade Practices Act.

III.     Count IV–Tortious Interference with Prospective Business Advantage Claim

Lastly, Nike has moved for summary judgment on McDavid's claim for tortious interference with a prospective business advantage under Illinois law, arguing that McDavid cannot prevail on that claim because the challenged statements to the colleges and universities were true. Under Illinois law, the elements of a claim for tortious interference with a prospective business advantage are

> (1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful or intentional interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from the interference.

*Cromeens, Holloman, Siber, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003) (citing *Soderlund Bros., Inc. v. Carrier Corp.*, 663 N.E.2d 1, 7-8 (Ill. App. Ct. 1995)). However, a defendant who "has not employed a wrongful means or is not motivated solely by malice or ill will" but "merely gives truthful information to another," is not liable for tortious interference with a prospective business advantage under Illinois common law. *Id.* at 399 (citing *Soderlund Bros.*, 663 N.E.2d at 10). Here, based on the court's above finding that Nike's representations

were not false statements of fact but rather opinions of contract interpretation, McDavid's tortious interference with a prospective business advantage claim similarly fails.

<u>CONCLUSION</u>

For the reasons explained above, Nike's "Motion for Summary Judgment of All Causes of Action" (Dkt. No. 179) is granted with respect to Count V-the Lanham Act claim, Count II-the Illinois Consumer Fraud Act claim, Count III-the Illinois Uniform Deceptive Trade Practices Act claim, and Count IV-the common law tortious interference with prospective business advantage claim. Status is set for Thursday, July 29, 2010, at 9:00 a.m. to discuss scheduling. Nike's motion for summary judgment on McDavid's claim for patent infringement is denied as moot because McDavid's "Motion for Leave to File Second Amended Complaint" (Dkt No. 253) has been granted.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: July 28, 2010