IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MCDAVID KNEE GUARD, INC., and | ) | |
| STIRLING MOULDINGS LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08 C 6584 |
| | ) | |
| NIKE USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiffs McDavid Knee Guard, Inc. ("McDavid Knee Guard") and Stirling Mouldings

Limited ("Stirling") (collectively "McDavid") originally filed this action against defendant Nike

USA, Inc. ("Nike") for infringement of U.S. Patent No. 6,743,325 ("'325 Patent") based on

Nike's importation of certain foam padded garments manufactured in Taiwan. This court issued

its claim construction opinion as to the '325 Patent's disputed claim terms on September 17,

2009 (Dkt. No. 137), and denied McDavid's motion for a preliminary injunction on January 14,

2010 (Dkt. No. 170). The Federal Circuit affirmed the denial of McDavid's motion for

preliminary injunction on October 13, 2010. *See McDavid Knee Guard, Inc. v. Nike USA, Inc.*,

No. 2010-1171, 397 Fed. Appx. 655 (Fed. Cir. Oct. 13, 2010). On May 25, 2010, while this

litigation was pending, Stirling obtained a reissue of the '325 Patent: U.S. Patent No. RE41,346

("'346 Patent"). The court subsequently granted McDavid leave to amend its complaint to assert

a claim against Nike for infringement of the '346 Patent. (*See* Dkt. No. 267.) The parties have

identified additional claim terms in the '346 Patent for the court's construction, and the court

addresses those disputed claim terms below. Also pending before the court are McDavid's and

Nike's motions for summary judgment related to the '346 Patent. For the reasons explained

below, McDavid's "Motion for Summary Judgment of Infringement" (Dkt. No. 297

("McDavid's Mot.")) is denied, and Nike's "Motion for Summary Judgment on All Causes of

Action" (Dkt. No. 309 ("Nike's Mot.")) is granted in part and denied in part.

## BACKGROUND

The '346 Patent is titled "Flexible Material" and is a reissue of the '325 Patent. David

Stirling Taylor is the named inventor, and Stirling is the assignee. McDavid Knee Guard and

Stirling entered into a licensing agreement on June 30, 2005, which granted McDavid Knee

Guard an exclusive license to the '346 Patent in the sporting goods field of use. (Dkt. No. 319

("Nike's Local R. 56.1(b)(3) Resp.") ¶ 3.)

The Abstract for the '346 Patent provides the following description of the invention:

> A flexible material includes a plurality of separate resilient elements joined to a
> flexible, resiliently stretchable substrate. Such a material is suitable for providing
> protective war [sic] for human and animal bodies. Preferably, the elements
> includes [sic] a foam material such as a closed cell polyethylene foam and the
> substrate includes a knitted fabric. In an advantageous embodiment, a second
> flexible substrate is bonded over the elements to sandwich them between the two
> layers of substrate.

'346 Patent, Abstract. According to the '346 Patent, the flexible material created by the

disclosed manufacturing method allows the material to conform to the body of the wearer

because the material is flexible in all three dimensions. *Id*. at col.2 ll.41-43. Due to this

increased flexibility, the material is more comfortable to wear and can accommodate movement

better than previous conventional materials. *Id.* at col.2 ll.43-45.

McDavid alleges that Nike infringes claims 1, 6-8, 13, and 22-24 of the '346 Patent,

which are identical to the asserted claims of the original '325 Patent with the exception of new

reissue claims 22-24. (Dkt. No. 314 ("McDavid's Local R. 56.1(b)(3) Resp.") ¶¶ 5, 12-13.)

Claims 1 and 22 of the '346 Patent are the only asserted independent claims. (*Id.* ¶ 14.) Claim 1 of the '346 Patent recites:

> A method of manufacturing a flexible material comprising the steps of providing a sheet of a resilient material;
>
> cutting the sheeting into a plurality of spaced separate elements using a cutter which is pressed into the sheet to cut therethrough;
>
> making one side of the plurality of spaced separate elements to stand proud of a surface of a jig provided to hold the elements in place; and
>
> bonding a flexible resiliently stretchable substrate to one side of the separate elements by heating the substrate either to activate an adhesive applied between said one side of the separate elements and the substrate or to weld the separate elements to the substrate.

'346 Patent, col.6 ll.35-48.

> Claim 22 recites:
>
> A method of manufacturing a flexible resiliently compressible material comprising:
>
> providing a first resiliently stretchable fabric substrate;
>
> cutting a layer of foam with a cutter grid having cutting edges which go completely through the foam layer to provide an array of a plurality of separate cut individual resiliently compressible elements which have been cut from the foam and after cutting are in a spaced apart relationship, the individual elements being spaced about 2 mm from each other, the array of elements having top and bottom surfaces;
>
> bonding one of the surfaces of the array of the plurality of separate cut individual resiliently compressible elements to the first resiliently stretchable fabric substrate while the separate cut individual elements are held in the spaced apart relationship with a jig to provide a fabric element combination, the elements of the fabric element combination held in spaced bonded relationship;
>
> providing a second resiliently stretchable fabric substrate;

bonding the second resiliently stretchable fabric substrate to the elements of the fabric element combination to the elements on the side of the array opposite the first fabric substrate so that the elements will be held in a spaced apart relation between the first and second resiliently stretchable fabric substrates with spaces between the elements, the fabric substrates not bonded to each other in the spaces and to provide the flexible resiliently compressible material.

*Id.* at col.8 ll.35-67.

McDavid alleges that Nike infringes the asserted claims of the '346 Patent under 35 U.S.C. § 271(g)[1] by importing into the United States and by offering to sell, selling, and/or using within the United States foam padded garments sold under the marks "Deflex" and "Nike Pro Combat." (McDavid's Local R. 56.1(b)(3) Resp. ¶¶ 5, 13.) Nike's accused products are made from stretchable fabric and include matrices of small individual foam pads placed in strategic locations to protect certain body parts–such as the hips, tailbone, and elbows–from contact injuries. (*Id.* ¶ 18.) Non-party Finn Technologies Holdings Ltd. ("Finn Tech") makes the padding for Nike's products in Asia and then ships the padding to a garment maker who sews the padding into garments in Asia before supplying Nike with the garments. (*Id.* ¶ 19.) In its discussion below, the court limits its description of the accused process so as to protect any interested parties' confidential information.

I.    Claim Construction

On September 17, 2009, this court issued its constructions for the following claim terms in the original '365 Patent: "jig," "spaced separate elements," and "making one side of the

---

[1] 35 U.S.C. § 271(g) provides that "[w]hoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent."

plurality of spaced separate elements to stand proud of the surface of a jig." (Dkt. No. 137 ("9/17/09 Cl. Constr. Mem. Op.").) The parties now ask the court to construe the following claim terms in the '346 Patent: "jig provided" (claim 1); "jig" (claim 22); "so that the elements will be held in a spaced apart relationship . . . with spaces between the elements" (claim 22); and "cut from the foam" (claim 22).

In its claim construction submissions, Nike also argues that the following claim terms render the respective claims invalid: "the individual elements being spaced about 2mm from each other" (claim 22); "[t]he method according to claim 22 wherein the elements are distributed between the substrates at a density of from about 250 to 8000 elements/m$^2$ between the substrates" (claim 23); and "the method according to claim 23 wherein the elements are comprised of layers of foam having different densities" (claim 24). The court addresses these invalidity arguments below in its analysis of Nike's motion for summary judgment.

Claim construction is a matter of law for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390-91 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In construing a patent claim, the court gives a claim term its "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. The ordinary and customary meaning of a claim term is determined in light of the entire intrinsic evidence, e.g., the claims, the specification, and the prosecution history. *Id.*

A.     "jig provided" (claim 1) and "jig" (claim 22)

In its original claim construction opinion, this court construed "jig" in claim 1 of the '325 Patent–which is identical to claim 1 of the reissue '346 Patent–to mean "a device or tool that is different from the material on which the manufacturing work is performed that holds the elements created by the patented manufacturing process in the correct position during the manufacturing process."  (9/17/09 Cl. Constr. Mem. Op. 9.)

McDavid asks the court to reconsider this previous construction of "jig" in claim 1, arguing that the court's initial construction excludes a preferred embodiment, *see Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) ("A claim construction that excludes the preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996))); specifically, the embodiment where the cutter is a jig. According to McDavid, the term "jig" in claim 1 of the '346 Patent is "a structure that is adapted to mechanically hold the cut elements in place."  (Dkt. No. 307 ("McDavid's C.C. Br.") at 10.) Under this construction, the excess material in the work piece could be a "jig."  Nike, on the other hand, argues that this court's original construction of "jig" in claim 1, which excludes the excess material in the work piece, is correct.  (Dkt. No. 294 ("Nike's C.C. Br.") at 1.)

For the reasons previously explained in its prior claim construction opinion, this court finds that both the intrinsic and extrinsic evidence support a construction of the claim term "jig" in claim 1 of the '346 Patent that excludes the excess material in the work piece.  The plain and ordinary meaning of "jig" is "a device or tool that is different from the material on which the manufacturing work is performed that holds the elements created by the patented manufacturing

process in the correct position during the manufacturing process," and neither the specification nor the prosecution history supports broadening that claim term beyond its plain and ordinary meaning to include the excess foam material on the work piece.

McDavid's argument that the original construction of "jig" improperly excludes a preferred embodiment does not support a different result. Dependent claim 2 of the '346 Patent recites a "cutter" that "acts as the jig." '346 Patent, col.6 ll.49-53. Relying on this court's previous finding that the plain language of claim 1 "suggests that the 'jig' will be supplied in a separate step during manufacture" (*see* 9/17/09 Cl. Constr. Mem. Op. 6), McDavid argues that under the court's original construction of "jig," the cutter could not be a jig "because, like the resilient material, the cutter is already 'provided' in an earlier step" in the manufacturing process (McDavid's C.C. Br. 10). In other words, because the cutter is not provided *after* the cutting step, this court's previous construction of "jig" improperly excludes a cutter.

McDavid, however, misinterprets this court's construction of "jig." Contrary to McDavid's contention, the court's construction of "jig" does not temporally limit when the jig is introduced into the manufacturing process but instead merely requires that the jig not be a by-product of the manufacturing process, e.g., part of the foam work piece. The court accordingly does not find that its original construction of "jig" excludes a preferred embodiment.

The court likewise disagrees with McDavid that the claim term "jig" in claim 22 of the '346 Patent should have a distinct construction from the term "jig" in claim 1. According to McDavid, because claim 22 of the '346 Patent–unlike claim 1–only recites a "jig" as opposed to a "jig provided," the "jig" in claim 22 should include the excess foam in the work piece. The Federal Circuit, however, applies a "presumption that the same terms appearing in different

portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." *Paragon Solutions, L.L.C. v. Timex Corp.*, 566 F.3d 1075, 1087 (Fed. Cir. 2009) (quoting *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007)).

Here, neither the claims, the specification, nor the prosecution history suggests that "jig," as that term appears in claim 1, has a different meaning from the term "jig" appearing in claim 22. The court has considered McDavid's remaining arguments for construing "jig" in claim 22 as distinct from "jig" in claim 1 and finds that they are similarly unavailing. The court therefore applies the same construction for the term "jig" in claim 22 of the '346 Patent as the term "jig" in claim 1: "a device or tool that is different from the material on which the manufacturing work is performed that holds the elements created by the patented manufacturing process in the correct position during the manufacturing process."

B. "so that the elements will be held in a spaced apart relation . . . with spaces between the elements" (claim 22)

The phrase "so that the elements will be held in a spaced apart relation . . . with spaces between the elements" appears in claim 22 of the '346 Patent. According to Nike, the court should construe this claim term to mean "distinct foam elements held, once they have been bonded between fabric substrates, such that none of them come into contact with each other and the spaces between all of them are empty." (Nike's C.C. Br. 2.) McDavid argues that this construction is improper for two reasons. First, according to McDavid, the "spaces between the elements" claim limitation does not require that the spaces be "entirely empty." (Dkt. No. 318 ("McDavid's Resp. C.C. Br.") at 5-6.) Second, the claim limitation applies to only a "plurality"

of the elements, as opposed to *all* the elements.  (*Id.* at 5.)  McDavid accordingly submits that "so that the elements are held in a spaced apart relation . . . with spaces between the elements" means that "the first and second fabric substrates hold the cut elements in a spaced apart relation wherein there is a distance or extent between the cut elements."  (McDavid's C.C. Br. 13.)  For the reasons explained below, the court adopts Nike's proposed construction of the claim term "so that the elements will be held in a spaced apart relation . . . with spaces between the elements."

1.      "Spaces Between the Elements" Requires Empty Spaces

First, the court agrees with Nike that a person of ordinary skill in the art, having read the '346 Patent, would understand the phrase, "so that the elements are held in a spaced apart relation . . . *with spaces between the elements*," as requiring the presence of "empty space" between the elements.  The Federal Circuit has explained that "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."  *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1378 (Fed. Cir. 2009) (citing *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005)).  Here, the court finds that the disputed claim language conveys two distinct concepts.  The phrase "spaced apart relation . . . with spaces between the elements" not only describes the relationship of the elements to each other–i.e., they are "spaced apart"–but also describes the environment surrounding the elements–i.e., it contains "spaces."  To only require that the elements are in a "spaced apart relation," as proposed by McDavid, would render the phrase "with spaces between the elements" superfluous.

The court's interpretation of this claim language is consistent with the specification. For example, the specification describes how the arrangement of the elements provides a "universal

flexibility":

> [A]s the elements are separate and spaced apart; this facilitates flexing of the substrate to form a curved surface and enables the material to flex in all directions without 'locking up' or preventing movement in a particular direction. This is a particular advantage the flexible material of the present invention has over the prior art arrangements which tend not to exhibit universal flexibility.

'346 Patent, col.2 ll.48-54. The figures in the specification also disclose empty spaces between the elements. Figure 1 illustrates the elements bonded on one side to a layer of fabric with empty spaces between the elements. Figure 7 similarly depicts an embodiment with a layer of fabric bonded to each side of the elements, and the elements are separated by empty spaces.

Although McDavid is correct that the embodiments disclosed in the specification should not limit broader claim language without an express disclaimer of claim scope, *see, e.g., i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010) ("Generally, a claim is not limited to the embodiments described in the specification unless the patentee has demonstrated a clear intention to limit the claim's scope with words or expressions of manifest exclusion or restriction.") (citation and internal quotations omitted), in this case, the court is not improperly relying on the embodiments in the specification to narrow the claim. Rather, the court looks to these embodiments as further support for the court's understanding of the plain and ordinary meaning of the disputed claim term "so that the elements will be held in a spaced apart relation . . . with spaces between the elements."

Based on the court's determination that the plain language of the claim unambiguously requires empty spaces between the elements, the court does not rely on the parties' proffered extrinsic evidence to assist in its construction. *See Phillips*, 415 F.3d at 1319 (explaining that

whether to "admit and use" extrinsic evidence such as expert testimony is within the district court's discretion).

### 2. The Claim Limitation Applies to All the Elements

Second, the court disagrees with McDavid that the claim term "so that the elements will be held in a spaced apart relation . . . with spaces between the elements" applies to only a "plurality" of the elements as opposed to all the elements. According to McDavid, because claim 22 recites "an array of a plurality" of cut elements and a "plurality" means "more than one," *see ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1382 (Fed. Cir. 2003), claim 22 does not require that *all* the elements have spaces between them. (McDavid's Resp. C.C. Br. 5.) Nike does not dispute that the term "plurality" means "more than one." (Dkt. No. 320 ("Nike's Reply C.C. Br.") at 5.) Instead, Nike contends that the term "plurality" appearing in claim 22 simply means "that the *array* resulting from the cutting step has more than one element." (*Id.* (emphasis added).) The court agrees with Nike.

Claim 22 requires "spaces between *the elements.*" '346 Patent, col.8 ll.64-65 (emphasis added). The antecedent basis for "the elements" is the "array of a plurality of separate cut individual resiliently compressible elements." *Id.* at col.8 ll.41-42. Thus, in the context of claim 22, the term "plurality" means that the "array" produced by the cutting step has more than one element. Once that array is created, the subsequent steps apply to the entire array of cut elements, not to only "more than one" of the cut elements as McDavid asserts.

For example, in describing the first bonding step, claim 22 recites "bonding one of the surfaces *of the array* of the plurality of separate cut individual resiliently compressible elements." *Id.* at col.8 ll.47-48 (emphasis added). The second bonding step involves "bonding

11

the second resiliently stretchable fabric substrate to the elements of the fabric element combination *to the elements on the side of the array* opposite the first fabric substrate." *Id.* at col.8 ll.59-62 (emphasis added). The bonding steps accordingly apply to the *entire array* of the cut elements, as opposed to only a plurality of the cut elements.

Similarly, the court finds that claim 22's requirement that "the elements will be held in a spaced apart relation . . . with spaces between the elements" must apply to all the elements in the array. McDavid has not identified any evidence in the either the specification or prosecution history that suggests otherwise. The court therefore adopts Nike's proposed construction of "the elements will be held in a spaced apart relation . . . with spaces between the elements" and construes that claim term to mean "distinct foam elements held, once they have been bonded between fabric substrates, such that none of them come into contact with each other and the spaces between all of them are empty."

C.     "cut from the foam" (claim 22)

Claim 22 of the '346 Patent recites "cutting a layer of foam with a cutter grid having cutting edges which go completely through the foam layer to provide an array of a plurality of separate cut individual resiliently compressible elements which have been *cut from the foam*." '346 Patent, col.8 ll.39-43 (emphasis added). According to Nike, the claim term "cut from the foam" means "removed from the foam sheet by or after the cutting step and before the first bonding step." (Nike C.C. Br. 2.) McDavid, on the other hand, contends that "cut from the foam" means "cut and severed from the foam sheet." (McDavid's C.C. Br. 12.) In other words, the claim term does not "require that the cut elements are removed from the excess material before further processing." (McDavid's Resp. C.C. Br. 6.) The court agrees with McDavid that

"cut from the foam," in the context of claim 22, means "cut and severed from the foam sheet."

Starting with the language of claim 22, that claim does not expressly require a step of removing the elements from the excess foam. Nike, however, argues that the "cut from the foam" limitation in claim 22 must be interpreted in connection with claim 1, which does not include the "cut from the foam" claim language. As a result, to not be superfluous, the claim term "cut from the foam" in claim 22 requires an additional step beyond what is claimed in claim 1; namely, it requires the "removal of the foam elements by or after the cutting step and before the first bonding step." (Nike C.C. Br. 6.)

McDavid, in contrast, contends that the claim language "cut from the foam" in claim 22 "simply describes the intended result" of the cutting step. (McDavid's Resp. C.C. Br. 7.) In support of this position, McDavid cites the Federal Circuit's decision in *Minton v. National Association of Securities Dealers, Inc.*, 336 F.3d 1373 (Fed. Cir. 2003), which explained that "[a] whereby clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited." *Id.* at 1381. Here, the court agrees with McDavid that under *Minton* the phrase "cut from the foam" in claim 22 does not impose an additional limitation that the cut elements be removed from the foam but instead merely describes the intended result of the claimed cutting step.

This interpretation of "cut from the foam" in claim 22 is further supported by the plain language of the other claims in the '346 Patent. *See Phillips*, 415 F.3d at 1314 ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term."). Specifically, certain claims in the '346 Patent explicitly refer to the removal of the foam, thereby suggesting that if the inventor intended

to include the "removal" of the foam elements from the foam sheet "by or after the cutting step and before the first bonding step" as a claim limitation in claim 22, he would have used language to that effect in the claim. Dependent claim 5, for example, recites: "[T]he method as claimed in claim 3, wherein any excess resilient material *is removed* from between the plurality of spaced separate elements prior to the elements being bonded to the substrate." '346 Patent, col.6 ll.61-64. (emphasis added). Dependent claim 12 similarly states:

> The method as claimed in claim 11 wherein the rolling cutters are moved sideways after each cut to cut narrow strips of material in both directions to space the element apart, *the narrow strips of material being removed to leave the plurality of spaced separate elements* spaced from one another.

*Id.* at col.7 ll.20-25 (emphasis added). Claim 22, in contrast, does not refer to the removal of either the excess foam or the foam elements.

Nor is the court persuaded by Nike's argument that the '346 Patent's specification supports Nike's proposed construction. According to Nike, the specification's discussion of the following embodiment indicates that the phrase "cut from the foam" in claim 22 requires the removal of the foam elements from the foam sheet:

> If the foam 10 is to be cut into large pieces, in particular large irregularly shaped pieces such as may be suitable for use in an equestrian jacket, then these pieces may be assembled into a specially constructed jig to hold them into place before application of the fabric substrate 14. As described above, the sheet of resilient foam *from which the elements are cut* will have hot-melt adhesive applied to one or both surfaces prior to the cutting process.

*Id.* at col.5 ll.60-67 (emphasis added). Claim 22, Nike contends, is directed toward this embodiment.

In contrast, the two other disclosed embodiments in the '346 Patent involve a process in

which the excess foam is removed from the elements. In one embodiment, the "cutter 12 cuts through the foam 10 to form a plurality of separate cubes" and the "[e]xcess material from between the elements is then removed." *Id.* at col.5 ll.42-47. In a second embodiment, the material is cut into strips using rolling cutters wherein "[t]he cutters are then moved side-ways to cut narrow strips of foam in both directions to space the cubes apart, *the narrow strips of foam being stripped away to leave the cubes*." *Id.* at col.6 ll.1-7 (emphasis added). Nike argues that claims 2 and 12 are directed to these two embodiments. Because claims 2 and 12 do not include the phrase "cut from the foam," Nike posits that "cut from the foam" in claim 22 must refer to the elements being removed from the foam. The court disagrees.

In *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282 (Fed. Cir. 2010), the Federal Circuit explained the role of the specification in claim construction:

> Construing the claims in light of the specification does not . . . imply that limitations discussed in the specification may be read into the claims. It is therefore important not to confuse exemplars or preferred embodiments in the specification that serve to teach and enable the invention with limitations that define the outer boundaries of claim scope.

*Id.* at 1287. Here, the court finds that adopting Nike's proposed construction of the phrase "cut from the foam" would improperly import a limitation into claim 22. First, the specification does not include the phrase "cut from the foam" and accordingly provides no discussion of whether that phrase requires the removal of the cut elements from the foam sheet by or after the cutting step and before the first bonding step as Nike contends. Second, the court is not persuaded that the phrase "the sheet of resilient foam from which the elements are cut," in the embodiment cited by Nike in which the elements are placed in a specially constructed jig, supports Nike's proposed construction. That embodiment does not discuss whether the elements are removed from the

foam sheet or whether the excess foam is removed from between the elements.

The court accordingly finds that the plain language of the claims and the specification do not support Nike's position that the phrase "cut from the foam" requires the additional step of removing the elements from the foam sheet by or after the cutting step and before the first bonding step. Because the court finds that the appropriate construction of "cut from the foam" is clear from the intrinsic evidence, it does not consider the parties' identified extrinsic evidence in construing this claim term. Thus, for the reasons explained above, the court adopts McDavid's construction of "cut from the foam" and construes that term to mean "cut and severed from the foam sheet."

II.    Summary Judgment Motions

McDavid has moved for summary judgment that the accused Finn Tech method for manufacturing Nike's products literally infringes claims 22 and 23 of the '346 Patent. (Dkt. No. 297 ("McDavid's Mot."); Dkt. No. 298 ("McDavid's Mem").) Relatedly, Nike has moved for summary judgment that asserted claims 1, 6-8, 13, and 22-24 of the '346 Patent are not infringed, either literally or under the doctrine of equivalents, and that claims 22-24 of the '346 Patent are invalid. (Dkt. No. 309 ("Nike's Mot."); Dkt. No. 288 ("Nike's Mem.").) "A summary judgment motion is proper if there are no genuine issues of material fact, while viewing the facts in the light most favorable to the non-moving party." *Nazomi Communs., Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1367 (Fed. Cir. 2005).

As an initial matter, the court addresses McDavid's argument that the court should deny Nike's summary judgment motion as untimely because Nike technically did not file its motion until November 8, 2010–three days after the November 5, 2010 filing deadline. Nike did,

however, file its memorandum in support of its motion for summary judgment and all supporting documents on November 5, 2010. (*See* Dkt. No. 288.) The court finds that McDavid has not and cannot demonstrate any prejudice resulting from Nike's failure to file its motion by the November 5, 2010 deadline. Additionally, although McDavid correctly notes that Nike's motion did not expressly seek summary judgment of invalidity of claims 22-24 of the '346 Patent, Nike did present those invalidity arguments in its timely-filed memorandum in support of its motion. Because McDavid had notice of Nike's invalidity arguments by the November 5, 2010 filing deadline, the court considers those invalidity arguments below.

    A.      Infringement of the '346 Patent

The patent infringement analysis involves two steps: "First, the court must construe the asserted claim . . . . Second, the court must determine whether the accused product or process contains each limitation of the properly construed claims." *Tessera, Inc. v. Int'l Trade Comm'n*, No. 2010-1176, 2011 WL 1944067, at *4 (Fed. Cir. May 23, 2011) (alteration in original) (quoting *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356-57 (Fed. Cir. 2005)). A claim is infringed if "every element and limitation of the claim [is] present in the accused device, literally or by an equivalent." *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1357-58 (Fed. Cir. 2006). "[A] court may determine infringement on summary judgment 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'" *Innovention Toys, L.L.C. v. MGA Entm't, Inc.*, 637 F.3d 1314, 1319 (Fed. Cir. 2011) (quoting *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)).

    1.      Literal Infringement

"Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.'" *KCJ Corp v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1358 (Fed. Cir. 2000) (quoting *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)). Here, independent claims 1 and 22 of the '346 Patent both require the presence of a "jig," which this court has construed to mean "a device or tool that is different from the material on which the manufacturing work is performed that holds the elements created by the patented manufacturing process in the correct position during the manufacturing process."

McDavid does not dispute that the accused Finn Tech process does not employ a jig that is a distinct device separate from the foam sheet from which the individual elements are cut. (*See* Dkt. No. 299 ("McDavid's Local R. 56.1(a)(3) Stmt.") ¶¶ 17-28.) Instead, McDavid argues that in the accused process, the excess foam material between the cut elements is a jig because it holds the individual elements in the proper position for the bonding step. (Dkt. No. 313 ("McDavid's Opp.") at 5-6.) The court disagrees.

Because the "jig," as construed by this court, must be "a device or tool that is different from the material on which the manufacturing work is performed," no reasonable jury could conclude that the excess foam material, which is part of the foam work piece rather than a separate device, is a "jig" as required by claims 1 and 22 of the '346 Patent.[2] McDavid's motion for summary judgment that the accused process literally infringes claims 22-23 accordingly is denied, and Nike's motion for summary judgment that the accused process does not literally

---

[2]   Because literal infringement requires that the accused method include every claim limitation, the court does not address whether the accused process practices the remaining limitations of independent claims 1 and 22.

infringe the asserted claims of the '346 Patent is granted.

2.      Infringement Under the Doctrine of Equivalents

Nike further argues that it does not infringe either claim 1 or claim 22 of the '346 Patent under the doctrine of equivalents.[3]  "The 'essential inquiry' in any determination under the equivalents doctrine is whether 'the accused product or process contain[s] elements identical or equivalent to each claimed element of the patented invention.'"  *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011) (alteration in original) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)).  Under the doctrine of equivalents, a party cannot "avoid[] infringement liability by making only 'insubstantial changes and substitutions . . . which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law.'"  *Id.* (quoting *Graver Tank & Mfg. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950)).  In determining whether an alleged equivalent includes only "insubstantial changes and substitutions," the Federal Circuit has applied the "function-way-result test . . . which asks whether an element of an accused product performs substantially the same function in substantially the same way to obtain substantially the same result as an element of the patented invention."  *Id.* (internal quotations

_____

[3] Nike alternatively argues that McDavid has waived a claim to infringement under the doctrine of equivalents because "[t]o date, McDavid has declined to fully explain its infringement allegations under the doctrine of equivalents."  (Nike's Mem. 10.)  In response, McDavid states that it informed Nike as early as December 18, 2009, that McDavid was pursuing infringement under the doctrine of equivalents and that McDavid's expert, Glenn Beall, set forth his doctrine of equivalents infringement opinion in both his January 29, 2010, and September 10, 2010 expert reports.  (McDavid's Opp. 9.)  Nike offers no arguments as to why these disclosures from McDavid were inadequate.  (*See* Dkt. 321 ("Nike's Reply") at 8-9.)  Having reviewed McDavid's cited materials, the court agrees with McDavid that McDavid has not waived this theory of infringement.

omitted).

Like literal infringement, infringement under the doctrine of equivalents is a question of fact. *Wavetronix v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1360 (Fed. Cir. 2009). Although the parties' doctrine of equivalents arguments do not differentiate between claim 1 and claim 22 of the '346 Patent, the court will address each independent claim separately because the "standing proud" limitation, a key aspect of Nike's non-infringement position, is not present in claim 22.

a.     Claim 1 of the '346 Patent

Nike argues that it does not infringe claim 1 of the '346 Patent under the doctrine of equivalents because the accused Finn Tech process is not performed in the same *way* as the claimed process. Specifically, the accused process (1) does not involve a separate jig and (2) does not include the "standing proud" step. Instead, the Finn Tech process is more labor intensive and involves the manual stripping of the adhesive from the excess foam material.

McDavid does not respond to Nike's arguments with respect to the "standing proud" step but instead focuses on whether the excess material in the work piece performs substantially the same function in substantially the same way to achieve substantially the same result as the "jig" recited in claim 1. Specifically, according to McDavid, the excess foam material in the accused Finn Tech process performs substantially the same function as the jig by holding the elements in the proper position prior to the bonding step; the excess material performs this function in substantially the same way as the jig by providing support to the cut elements to keep the elements in the proper position for bonding; and the excess material achieves substantially the same result of allowing the separate spaced elements to be bonded to a substrate in the desired spaced orientation. In addition, McDavid presents the declaration of its expert, Glenn Beall, who

opines that a person of ordinary skill in the art would have known of "the interchangeability of using the transformed excess material from which the product is made, with using a jig made from material different than that of the product." (Dkt. No. 211 ("3/2/10 Beall Decl.") ¶ 31.) Drawing all reasonable inferences in favor of McDavid, the court finds that McDavid has at least raised a genuine issue of material fact as to whether the excess material in the accused process satisfies the "jig" claim limitation in claim 1 under the doctrine of equivalents.

With respect to the "standing proud" claim limitation, however, the court finds that McDavid has not presented any evidence from which a jury could reasonably conclude that the accused method includes the equivalent of the "standing proud" step. Indeed, McDavid fails to address the "standing proud" limitation in its opposition to Nike's motion for summary judgment.

Even at the summary judgment stage, however, the Federal Circuit requires that the patentee

> provide particularized testimony and linking argument as to the "insubstantiality of the differences" between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.

*Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005) (quoting *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)).

Here, Nike argues that the accused process does not perform an equivalent of the claimed "standing proud" step because rather than having the elements stand proud of the surface of the jig to allow for selective bonding of the elements to the fabric substrate, the accused process

involves the manual step of individually peeling the hot melt film from the excess waste material. Thus, the bonding of the elements to the substrate occurs in a substantially different *way* than the step claimed in claim 1. McDavid, in its opposition, does not present any evidence or argument to the contrary. Consequently, the court finds that McDavid has failed to come forward with "particularized testimony and linking argument" on a "limitation-by-limitation basis" demonstrating that the differences between the claimed invention and the accused process are insubstantial. Nike's motion for summary judgment of non-infringement of claim 1 of the '346 Patent under the doctrine of equivalents accordingly is granted.

b.      Claim 22 of the '346 Patent

Although the parties' doctrine of equivalents arguments collectively address claim 1 and claim 22 without distinguishing between these claims, the court reaches a different conclusion with respect to claim 22. Again, as discussed above in connection with claim 1, Nike argues that the accused process does not infringe claim 22 under the doctrine of equivalents because (1) it does not use a separate jig and (2) does not include the "standing proud" step. Consequently, according to Nike, the accused process is not performed in substantially the same way as the claimed process.

As the party moving for summary judgment of non-infringement, Nike must "stat[e] that the patentee had no evidence of infringement and point[] to the specific ways in which the accused [process] [does] not meet the claim limitations." *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308-09 (Fed. Cir. 2006). In this case, the court finds that Nike has failed to satisfy this burden. Notably, claim 22, unlike claim 1, does not include the "standing proud" limitation. Despite conceding that this limitation is not present in claim 22 (*see* Dkt. No. 289

("Nike's Local R. 56.1(a)(3) Stmt.") ¶ 54), Nike's non-infringement position, which does not distinguish between claim 1 and claim 22, heavily relies on the absence of a "standing proud" equivalent in the accused Finn Tech process. In fact, Nike criticizes McDavid for failing to address the "standing proud" limitation in McDavid's opposition: "Plaintiffs again base their entire argument on the waste material created by the cutting step in the Finn Tech process acting as the equivalent of a jig. But, Plaintiffs' position does not acknowledge that the way in which the Reissue [P]atent accomplishes selective bonding, the "making stand proud" step, is significantly different than the step of manually stripping the adhesive from the excess material." (Dkt. No. 321 ("Nike's Reply") at 9.) The standing proud limitation, however, undisputedly does not appear in claim 22. Thus, the absence of a "standing proud" equivalent in the accused process cannot be a basis for finding that the accused process does not infringe claim 22 under the doctrine of equivalents. Nor can Nike rely solely on the lack of a "jig" equivalent in the accused process because, as discussed above, the court has determined that McDavid has at least raised a genuine issue of material fact as to whether the excess material in the accused process satisfies the "jig" limitation under the doctrine of equivalents. Nike's motion for summary judgment that the accused method does not infringe claim 22 of the '346 Patent under the doctrine of equivalents accordingly is denied.

B.    Invalidity of Claims 22-24 of the '346 Patent

In its motion, Nike also argues that claims 22-24 of the '346 Patent are invalid. Specifically, Nike contends that claim 22 is invalid because the term "the individual elements being spaced about 2mm from each other" in claim 22 is indefinite and lacks an adequate written description. (Nike's Mem. 12-13.) Nike further contends that claim 22 is invalid for lack of a

written description because claim 22 does not describe how to selectively bond the elements to the fabric substrate. (*Id.* at 13.) Finally, Nike submits that dependent claims 23 and 24 recite only product limitations and therefore do not limit the process claimed in independent claim 22. (*Id.* at 14.) As a result, according to Nike, dependent claims 23 and 24 are invalid because they do not "specify a further limitation of the subject matter claimed" as required by 35 U.S.C. § 112 ¶ 4. The court will address each argument in turn.

        1.    "the individual elements being spaced about 2mm from each other" (Claim 22)

Nike argues that the claim term "the individual elements being spaced about 2mm from each other" in claim 22 is invalid under 35 U.S.C. § 112 because it is indefinite and lacks a written description. McDavid, however, contends that Nike has waived this specific invalidity argument by not including it in Nike's September 24, 2010 invalidity contentions (McDavid's Resp. C.C. Br. 10), and the court agrees.

On August 19, 2010, this court entered a scheduling order requiring Nike to submit its invalidity contentions to McDavid on September 24, 2010. (Dkt. No. 275.) In its proffered invalidity contentions, Nike did not identify the claim term "the individual elements being spaced about 2mm from each other" as a grounds for invalidating claim 22. (Nike's Invalidity Contentions, Chart 20 at 3 (attached as Ex. G to Dkt. No. 316).) Moreover, Nike never sought leave to amend its invalidity contentions, nor does Nike offer any explanation for why it failed to include this invalidity argument in its disclosed contentions. Instead, in responding to McDavid's arguments, Nike ignores the waiver issue. (*See* Nike's Reply C.C. Br. 8-11; Nike's Reply 9-12.) Because Nike did not identify this basis for invalidating claim 22 in its invalidity contentions and

has not provided the court with a justification for the omission, the court finds that Nike has

waived the right to pursue this invalidity theory at this time.

2.      Claim 22 and the Written Description Requirement

Nike additionally contends that claim 22 is invalid for failing to comply with the written

description requirement of 35 U.S.C. § 112 ¶ 1, which provides:

> The specification shall contain a written description of the invention, and of the
> manner and process of making and using it, in such full, clear, concise, and exact
> terms as to enable any person skilled in the art to which it pertains, or with which
> it is most nearly connected, to make and use the same, and shall set forth the best
> mode contemplated by the inventor of carrying out his invention.

In interpreting the written description requirement in *Ariad Pharmaceuticals, Inc. v. Eli

Lilly & Co.*, 598 F.3d 1336, 1351 (Fed Cir. 2010) (en banc), the Federal Circuit reiterated that the

disclosure in the specification must "clearly allow persons of ordinary skill in the art to recognize

that [the inventor] invented what is claimed." (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d

1555, 1562-63 (Fed. Cir. 1991)).  In other words, "[t]he disclosure must 'reasonably convey[] to

those skilled in the art that the inventor had possession of the claimed subject matter as of the

filing date.'"  *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d

1373, 1380 (Fed. Cir. 2011) (alteration in original) (quoting *Ariad*, 598 F.3d at 1351).  However,

"a patent claim is not necessarily invalid for lack of written description just because it is broader

than the specific examples disclosed."  *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d

1363, 1371 (Fed. Cir. 2009); *see also Bilstad v. Wakalopulos,* 386 F.3d 1116, 1123 (Fed. Cir.

2004) ("We cannot agree with the broad proposition . . . that in every case where the description

of the invention in the specification is narrower than that in the claim there has been a failure to

fulfill the description requirement in section 112." (alteration in original) (quoting *In re Smythe*, 480 F.2d 1376, 1382 (C.C.P.A. 1973))).

"Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the nonmoving party." *Crown Packaging*, 635 F.3d at 1380 (quoting *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008)). Because a patent is presumed to be valid, "the accused must show that the claims lack a written description by clear and convincing evidence." *Hynix Semiconductor Inc. v. Rambus Inc.*, No. 2009-1299, 2011 WL 1815978, at *12 (Fed. Cir. May 13, 2011).

In this case, the parties agree that claim 22 is not limited to methods that require either a step in which the separate elements "stand proud" or a step where the cutter acts as a jig. (McDavid's Local R. 56.1(b)(3) Resp. ¶ 54.) Their dispute instead centers on whether the '346 Patent's written description only discloses methods including one of these steps. According to Nike, all the disclosed embodiments in the '346 Patent explicitly or implicitly require a step where either the elements "stand proud" of a jig or a cutter acts as a jig. Because the '346 Patent's specification only discloses methods containing one of these two steps, Nike argues that "the Reissue [P]atent fails to provide an adequate written description to support the method claimed in . . . claim 22" under the Federal Circuit's decision in *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998). (Nike's Mem. 14.) McDavid, on the other hand, insists that the "standing proud" limitation is not an essential element of the invention disclosed in the '346 Patent; rather, the '346 Patent "discloses several embodiments that do not require the standing proud step." (McDavid's Opp. 14.) Based on the parties' submissions, the court finds

26

that Nike has failed to prove by clear and convincing evidence that claims 22-24 are invalid for lack of written description.

In *Gentry Gallery*, the Federal Circuit held that a patent's claims "directed to sectional sofas in which the location of the recliner controls is not limited to the console" were invalid for lack of written description because the "narrow disclosure" in the specification did not support such a broad claim. *Gentry Gallery*, 134 F.3d at 1478-79. In reaching this conclusion, the court noted that "it is clear that [the inventor] considered the location of the recliner controls on the console to be an *essential element* of his invention. Accordingly, his original disclosure serves to limit the permissible breadth of his later-drafted claims." *Id.* at 1479 (emphasis added).

More recently, in describing the significance of the *Gentry Gallery* decision, the Federal Circuit has instructed that *Gentry Gallery* "did not announce a new 'essential element' test mandating an inquiry into what an inventor considers to be essential to his invention and requiring that the claims incorporate those elements.'" *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1127 (Fed. Cir. 2008) (citing *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002)). Instead, the court in *Gentry Gallery* "applied and merely expounded upon the unremarkable proposition that a broad claim is invalid when the entirety of the specification *clearly indicates* that the invention is of a much narrower scope." *Id.* (citing *Cooper Cameron*, 291 F.3d at 1323) (emphasis added). In this case, this court finds that Nike has failed to present clear and convincing evidence that the '346 Patent's specification "clearly indicates" that the disclosed invention is limited to those methods including a step where either the elements "stand proud" or a cutter acts as a jig.

First, the specification does not suggest that standing proud is a required step but rather

27

indicates that it is a step in a preferred embodiment:  "Preferably, the cutter is adapted so that said one side of each, now cut, element are made to stand proud of the surface of the cutter grid." '346 Patent, col.4 ll.11-14.  The '346 Patent additionally discloses embodiments that do not reference either the standing proud step or a cutter acting as a jig.  For example, the specification instructs that "[i]f the flexible material is to be cut into large pieces, in particular large irregularly shaped pieces, then these pieces may be assembled into a specially constructed jig to hold them into place before application of the substrate."  *Id.* at col.4 ll.30-34.  Similarly, the specification discloses an embodiment where

> the sheet of resilient material is cut into strips in a first direction using a plurality of rolling cutters and then cut in a second direction at an angle to the first direction to the separate elements.  Preferably, the rolling cutters are moved sideways after each cut to cut narrow strips of material in both directions to space the elements apart, the narrow strips of material being removed to leave the separate elements spaced apart from one another.

*Id.* at col.4 ll.38-45.  This embodiment likewise does not state that the cutter acts as a jig nor does it address whether the elements must "stand proud."

Additionally, McDavid proffers the testimony of its expert, Glenn Beall, who relies on these embodiments in opining that "one of ordinary skill would appreciate that the standing proud step is a preferred, but not an essential element of the claimed invention."  (Dkt. No. 315 ("11/19/10 Beall Decl.") ¶ 4.)  Viewing this evidence in the light most favorable to McDavid and drawing all reasonable inferences in McDavid's favor, a reasonable jury could conclude that the disclosures in the specification "reasonably convey[] to those skilled in the art that the inventor had possession [of the subject matter of claim 22] as of the filing date."  *Crown Packaging*, 635 F.3d at 1380 (alteration in original) (quoting *Ariad*, 598 F.3d at 1351).  The court has considered

Nike's additional arguments with respect claim 22's compliance with the written description requirement and finds they also lack merit. Consequently, the court finds that Nike has failed to prove by clear and convincing evidence that claim 22 is invalid for failure to comply with the written description requirement, and Nike's motion with respect to this invalidity issue is denied.

3.    Validity of Claims 23 and 24 under 35 U.S.C. 112 ¶ 4

Claims 23 and 24 both depend from independent claim 22. Claim 23 recites: "The method according to claim 22 wherein the elements are distributed between the substrates at a density of from about 250 to about 8000 elements/m$^2$ between the substrates." Claim 24 recites: "The method according to claim 23 wherein the elements are comprised of layers of foam having different densities." Nike argues that claims 23 and 24 are invalid under 35 U.S.C. § 112 ¶ 4, which provides:

> Subject to the following paragraph [concerning multiple dependent claims], a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.

§ 112 ¶ 4; *see also Pfizer Inc. v. Ranbaxy Labs.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006) (holding that the fourth paragraph of § 112 was an invalidating provision). According to Nike, because both claims 23 and 24 describe only product or structural limitations, they do not limit the claimed process in independent claim 22. As a result, Nike contends, claims 23 and 24 are invalid under § 112 ¶ 4.

Nike, however, has not cited any Federal Circuit case law in which the court invalidated a dependent claim under § 112 ¶ 4 because the dependent claim recited only structural limitations

on the independent method claim.  To the contrary, Federal Circuit authority indicates that such dependent claiming is permissible.  In *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010)*, vacated on other grounds*, 419 Fed. Appx. 989 (Fed. Cir. Apr. 20, 2011), for example, the court explained that "[m]ethod claims often include structural details" in holding that the district court's claim construction properly included a structural element as a limitation in a method claim.  *Id.* at 1329-30.  Similarly, in *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374-75 (Fed. Cir. 2008), the court found that a method claim was not invalid for impermissibly claiming mixed classes of subject matter even though the claim included structural limitations.  As the court explained in *Microprocessor*, "Method claim preambles often recite the physical structures of a system in which the claimed method is practiced . . . ."  *Id.* at 1375; *see also Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1375-76 (Fed. Cir. 2005) (holding that the phrase "distributed computer system" in preamble of method claim was a claim limitation).

Finally, in *SunRace Roots Enterprise Co. v. SRAM Corp.*, 336 F.3d 1298 (Fed. Cir. 2003), the Federal Circuit discussed a dependent claim that added a "structural limitation" to the independent method claim:

> Dependent claim 24 adds to independent [method] claim 16 only the clause: "wherein said shift actuator comprises cam means rotatably mounted on the bicycle handlebar generally coaxially of the handlebar."  Because amended claim 16 already provides that the shift actuator must be rotatably mounted on the handlebar generally coaxially of the handlebar, *dependent claim 24 simply adds the structural limitation of a cam means.*

*Id.* at 1303 (emphasis added).  Although the court in *SunRace* did not expressly address the validity of the dependent claim under § 112 ¶ 4, the court's discussion did not question the validity

30

of the dependent claim even though that claim "simply add[ed] the structural limitation" to the method claim.

Based on the above authority, the court finds that Nike's argument that claims 23 and 24 are invalid under § 112 ¶ 4 because they only add structural limitations to a method claim lacks merit. Nike, therefore, has failed to prove by clear and convincing evidence that claims 23 and 24 are invalid, and its motion for summary judgment with respect to the invalidity of those claims is denied.

CONCLUSION

As explained above, the court has set forth its constructions of the disputed claim terms in the '346 Patent as follows:

"jig provided" (claim 1) is construed to mean: "a device or tool that is different from the material on which the manufacturing work is performed that holds the elements created by the patented manufacturing process in the correct position during the manufacturing process";

"jig" (claim 22) is construed to mean: "a device or tool that is different from the material on which the manufacturing work is performed that holds the elements created by the patented manufacturing process in the correct position during the manufacturing process";

"so that the elements will be held in a spaced apart relationship . . . with spaces between the elements" (claim 22) is construed to mean: "distinct foam elements held, once they have been bonded between fabric substrates, such that none of them come into contact with each other and the spaces between all of them are empty"; and

"cut from the foam" (claim 22) is construed to mean: "cut and severed from the foam

sheet."

Additionally for the reasons stated in this opinion, McDavid's motion for summary judgment of infringement of claims 22-23 of the '346 Patent (Dkt. No. 297) is denied. Nike's motion for summary judgment (Dkt. No. 309) is granted in part and denied in part. With respect to Nike's motion for summary judgment of non-infringement of all the asserted claims of the '346 Patent based on literal infringement, that motion is granted. Nike's motion for summary judgment of non-infringement of claim 1 of the '346 Patent under the doctrine of equivalents is also granted. Regarding Nike's motion for summary judgment of non-infringement of claim 22 of the '346 Patent under the doctrine of equivalents, that motion is denied. Nike's motion for summary judgment that claims 22-24 of the '346 Patent are invalid also is denied.

The parties are once again encouraged to discuss settlement and report on status at 9:00 a.m. on September 1, 2011.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date:    August 17, 2011