IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MCDAVID KNEE GUARD, INC., and STIRLING MOULDINGS LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 6584 |
| NIKE USA, INC., | ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiffs McDavid Knee Guard, Inc. ("McDavid Knee Guard") and Stirling Mouldings Limited ("Stirling") (collectively "McDavid") originally filed this action against defendant Nike USA, Inc. ("Nike") for infringement of U.S. Patent No. 6,743,325 ("'325 Patent") based on Nike's importation of certain foam padded garments manufactured in Taiwan. This court issued its claim construction opinion as to the '325 Patent's disputed claim terms on September 17, 2009 (Dkt. No. 137), and denied McDavid's motion for a preliminary injunction on January 14, 2010 (Dkt. No. 170). The Federal Circuit affirmed the denial of McDavid's motion for preliminary injunction on October 13, 2010. *See McDavid Knee Guard, Inc. v. Nike USA, Inc.*, No. 2010-1171, 397 Fed. Appx. 655 (Fed. Cir. Oct. 13, 2010). On May 25, 2010, while this litigation was pending, Stirling obtained a reissue of the '325 Patent: U.S. Patent No. RE41,346 ("'346 Patent"). The court subsequently granted McDavid leave to amend its complaint to assert a claim against Nike for infringement of the '346 Patent. (*See* Dkt. No. 267.)

On August 17, 2011, the court denied McDavid's motion for summary judgment on claims

-1-

22-23 of the '346 Patent, granted Nike summary judgment of non-infringement of all claims of the '346 Patent based on literal infringement, and granted Nike summary judgment of non-infringement of claim 1 of the '346 Patent under the doctrine of equivalents. (Dkt. No. 344.) On September 13, 2011, while this litigation was pending, Stirling obtained another reissue of the '325 Patent: U.S. Patent No. RE42,689 ("'689 Patent"). The court granted McDavid leave to amend the complaint again to assert claims for infringement of the '689 Patent. (*See* Dkt. No. 355.)

Pending before the court is McDavid's "Motion for Summary Judgment of Infringement of U.S. Reissue Patent RE 42,689," in which it contends that it is entitled to summary judgment on the grounds that Nike's accused process literally infringes the '689 Patent. (Dkt. No. 370.) For the reasons stated below, McDavid's motion is denied.

## BACKGROUND

The '689 Patent, like the '346 Patent, discloses a method of manufacturing a flexible material for use in protective padded apparel, such as the kind used for protection of an individual's body when playing sports. '689 Patent, col.1, ll.37-39. The flexible material created by the disclosed manufacturing method allows the material to conform to the body of the wearer because the material is flexible in all three dimensions. *Id.* at col.2 ll.57-59. Due to this increased flexibility, the material is more comfortable to wear and can accommodate movement better than previous conventional materials. *Id.* at col.2 ll.59-61.

McDavid alleges that Nike infringes the '689 Patent by importing, offering to sell, and selling protective garments under the name Pro Combat. (Dkt. No. 375 ("Pl.'s SMF") ¶ 10.) The padding for the Pro Combat apparel is made by Nike's supplier Finn Technologies Holdings Ltd.

("Finn Tech") in Asia.[1] (*Id.* ¶ 11.)

McDavid's motion seeks summary judgment on the ground that Nike literally infringed claims 15, 17, 20, 22, and 24 of the '689 patent. Only claims 15 and 22 assert independent claims. Claim 15 of the '689 Patent recites:

> A method of manufacturing a flexible resiliently compressible material, the method comprising:
>
> providing a first resiliently stretchable fabric substrate;
>
> cutting a sheet of resiliently compressible foam with a cutter that goes completely through the foam to provide an array of a plurality of separate individual resiliently compressible elements in a spaced apart relationship, the individual elements having a top surface and bottom surface in an array of top surfaces and bottom surfaces;
>
> providing a second resiliently stretchable fabric substrate;
>
> contacting the top surfaces and the bottom surfaces of the plurality of resiliently compressible elements with the first and second resiliently stretchable fabric substrates; and
>
> bonding the top and bottom surfaces of compressible elements to the first and second resiliently stretchable fabric substrates while the elements are held in a spaced apart relation with spaces of about 2 mm between the elements, the bonding selected from the group consisting of adhesively bonding and welding, the fabric substrates not bonded to each other in the spaces of about 2 mm and to provide the flexible resiliently compressible material with the elements being distributed between the substrates at a density of from about 250 to about 8000 elements/m$^2$.

Claim 22 of the '689 Patent recites:

> A method of manufacturing a flexible resiliently compressible material, the method comprising:

---

[1] Nike asserts that Finn Tech no longer manufactures the padding for the Pro Combat product line, and that the padding is currently manufactured by Sabrina in Asia. (Dkt. No. 415 ("Def.'s Resp. Pl.'s SMF") ¶ 17.) Nike further asserts, however, that Sabrina's manufacturing process is identical to that used by Finn Tech. (*Id.*) To avoid confusion, the court will continue to refer to the manufacturing process at issue in this litigation as the "Finn Tech process."

providing a first resiliently stretchable fabric substrate;

cutting a sheet of resiliently compressible foam with a cutting grid that goes completely through the foam to provide an array of a plurality of separate individual resiliently compressible elements in a spaced apart relationship, the individual elements having a top surface and a bottom surface in an array of top surfaces and bottom surfaces and which top surfaces and bottom surfaces are flat;

providing a second resiliently stretchable fabric substrate;

contacting the top surfaces and the bottom surfaces of the plurality of resiliently compressible elements with the first and second resiliently stretchable fabric substrates;

holding the resiliently compressible elements in spaced relation in an array created by the cutting grid after the cutting grid cuts the resiliently compressible foam; and

bonding the top and bottom surfaces of compressible elements to the first and second resiliently stretchable fabric substrates while the elements are held in a spaced apart relation with spaces of about 2 mm between the elements, the bonding selected from the group consisting of adhesively bonding and welding, the fabric substrates not bonded to each other in the spaces of about 2 mm and to provide the flexible resiliently compressible material with the elements being distributed between the substrates at a density of from about 250 to about 8000 elements/m$^2$.

In the discussion below, the court limits its description of the accused process so as to protect any interested parties' confidential information.

## LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts before it in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *McCann v. Iroquois Mem'l*

*Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

ANALYSIS

The patent infringement analysis involves two steps: "'First, the court must construe the asserted claim . . . . Second, the court must determine whether the accused product or process contains each limitation of the properly construed claims.'" *Tessera, Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357, 1364 (Fed. Cir. 2011) (alteration in original) (quoting *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356-57 (Fed. Cir. 2005)). A claim is infringed if "every element and limitation of the claim [is] present in the accused device, literally or by an equivalent." *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1357-58 (Fed. Cir. 2006). "[A] court may determine infringement on summary judgment 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'" *Innovention Toys, L.L.C. v. MGA Entm't, Inc.*, 637 F.3d 1314, 1319 (Fed. Cir. 2011) (quoting *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)).

I.   Literal Infringement of the '689 Patent

McDavid contends that every element of claims 15 and 22 of the '689 Patent is present in the Finn Tech manufacturing process.[2] In particular, it notes that the court's entry of summary judgment of non-infringement of claim 1 of the '346 Patent (Dkt. No. 344) relied on the court's determination that the Finn Tech process did not practice the element requiring the cut elements to

---

[2] Because "[i]t is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed," McDavid's motion for summary judgment on dependent claims 17, 20, and 24, must be denied if its motion on the independent claims fails. *Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994) (citing *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989)).

"stand proud of a surface of a jig," as recited in claim 1 of the '346 Patent.[3] Claims 15 and 22 of the '689 Patent omit the language, "stand proud of a surface of a jig," and McDavid argues that, in the absence of the offending phrase, it is entitled to summary judgment of infringement.

Claims 15 and 22, however, contain additional limitations that McDavid must show to be infringed before it is entitled to summary judgment. Nike focuses the court's attention on three in particular:"bonding the top and bottom surfaces of compressible elements to the first and second resiliently stretchable fabric substrates while the elements are held in a spaced apart relation with spaces of about 2 mm between the elements," "contacting the top surfaces and the bottom surfaces of the plurality of resiliently compressible elements with the first and second resiliently stretchable fabric substrates," and "elements are held."

The court holds that there is a genuine dispute of material fact as to whether the accused process practices the first limitation: "bonding the top and bottom surfaces of compressible elements to the first and second resiliently stretchable fabric substrates while the elements are held in a spaced apart relation with spaces of about 2 mm between the elements." Because literal infringement requires that the accused method include every claim limitation, the court therefore need not address whether the accused process practices the remaining limitations of claims 15 and 22.

Before construing the first limitation that Nike raises, the court must address one preliminary

---

[3] Claim 1 of the '346 Patent recited, *inter alia*, "making one side of the plurality of spaced separate elements to stand proud of a surface of a jig provided to hold the elements in place." '346 Patent, col.6 ll.41-43. The court held that the excess foam material that Finn Tech's process uses to hold the elements cut from a foam sheet does not constitute a "jig," which, as construed by the court "must be a device or tool that is different from the material on which the manufacturing work is performed." (Dkt. No. 345, at 18.) Because the excess foam is not composed of the same material as the cut elements, the court held that it is not a "jig" and that the cut elements thus cannot "stand proud of a jig." (*Id.*; *see also* Dkt. No. 366, at 2.)

matter. Nike contends that McDavid is not entitled to summary judgment because McDavid's summary judgment evidence includes only expert declarations relating to the '346 Patent, and none relating to the '689 Patent. McDavid has included a new expert declaration with its reply, however. (Dkt. No. 444.) "Although evidence presented for the first time in a reply brief is disfavored," the court may consider it in appropriate situations. *Lyon Fin. Servs., Inc. v. Jude's Med. Ctr., Ltd.*, No. 10 C 6957, 2011 WL 6029195, at *3 (N.D. Ill. Dec. 5, 2011). Here, Nike has not objected to the inclusion of the new expert declaration, nor has it requested the opportunity to file a sur-reply. Moreover, even considering the declaration, the court holds that McDavid is not entitled to summary judgment. Nike is thus not prejudiced by the new declaration, so the court will consider it.

Moving to the merits, Nike contends that, in the Finn Tech process, the bonding step does not occur "while the elements are held in a spaced apart relation with spaces of about 2 mm between the elements." Specifically, Nike asserts that in the Finn Tech process, excess foam material remains between the elements "while" the foam elements bond to the top and bottom fabric, but the phrase "with spaces of about 2 mm between the elements" requires empty space between the elements.

In support of its argument, Nike points out that the court previously construed the phrase "with spaces between the elements," which appeared in claim 22 of the '346 Patent, to require empty space between the elements. (Dkt. No. 345, at 9.) As the court explained:

> a person of ordinary skill in the art, having read the '346 Patent, would understand the phrase, "so that the elements are held in a spaced apart relation . . . with spaces between the elements," as requiring the presence of "empty space" between the elements. The Federal Circuit has explained that "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1378 (Fed. Cir. 2009) (citing *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005)). Here, the court finds that the disputed claim language conveys two distinct concepts. The phrase "spaced apart relation . . . with spaces between the elements" not only describes the relationship of the elements to each other–i.e., they are "spaced

apart"–but also describes the environment surrounding the elements–i.e., it contains "spaces." To only require that the elements are in a "spaced apart relation," as proposed by McDavid, would render the phrase "with spaces between the elements" superfluous.

(*Id.*) The court finds the same reasoning persuasive to construe the identical phrase in the '689 Patent, which thus also requires empty space between the elements during bonding.

McDavid contends that the '689 Patent phrase should be interpreted differently because it inserts the phrase "of about 2 mm" in the phrase "with spaces of about 2 mm between the elements." According to McDavid, the phrase "with spaces of about 2 mm between the elements" has meaning apart from construing the spaces to be empty, because it indicates the distance between the elements. Thus, the need to avoid superfluity does not arise and there is no reason to manufacture meaning by construing the phrase to require the spaces to be empty.

The problem with McDavid's argument is that the patentee could specify the distance between the elements if the claim omitted the phrase "spaces of" and read simply "while the elements are held in a spaced apart relation with about 2 mm between the elements." In other words, the phrase "spaces of" is unnecessary to communicate the distance between the elements. Accordingly, the phrase "spaces of" is still superfluous unless it is read to require empty spaces between the elements.

Next, McDavid contends that Nike's proposed construction requiring empty spaces between the elements during bonding excludes the preferred embodiment in the '689 Patent specification. Specifically, the specification discloses an arrangement in which "the cutter grid acts as a jig, holding the foam cubes in position whilst the fabric substrate is applied thereto." '689 Patent, col.5 ll.65-67. In that embodiment, as a figure in the specification confirms, the cutter blades are located between the cut elements. *Id.* at fig. 5. Consequently, the spaces between the elements are not empty.

Because "[a] claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct," *SanDisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) (citation and quotation marks omitted), McDavid argues that claims 15 and 22 cannot require empty spaces between the elements during bonding.

Although McDavid is correct that constructions excluding all preferred and alternative embodiments are not favored, "a claim need not cover all embodiments." *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1336-37 (Fed. Cir. 2007). Here, claim 1 of the '689 Patent includes a limitation requiring the use of "a jig to hold the elements in place" during bonding. Claim 1 thus plainly reads on the embodiments in the specification in which the spaces between the elements are not empty during bonding.

Claims 15 and 22, by contrast, do not read on those embodiments. Instead, they read on the alternative embodiment in which "ejectors are disposed in the cutter grid to eject the elements, leaving any waste material behind in the cutters." '689 Patent, col.6, ll.3-5. That embodiment does not explicitly specify whether the elements are ejected from the grid before the bonding step, so that the spaces between the elements are empty, or after the bonding step. McDavid, relying on the declaration of its expert, Glenn L. Beall, states that the ejection occurs after bonding. (Dkt. No. 444 ¶ 15.) Mr. Beall does not provide any grounds for his interpretation of the specification, however, but instead merely states his opinion in a conclusory fashion.

The court does not find his interpretation persuasive. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ("[W]here the legal expert's view of how the patent should be construed conflicts with the patent document itself, such conflict does not . . . bind the court or relieve the court of its obligation to construe the claims according to the

tenor of the patent."). Although Mr. Beall does not support his view, it likely depends on the assumption that the alternative embodiment is an alternative to only the immediately preceding paragraph, which proposes removing the fabric and cut foam elements from the cutter *after bonding* by lifting the fabric away from the cutter. '689 Patent, col.6, ll.1-2. Were that the case, however, the alternative embodiment's reference to leaving waste material behind would make no sense, for the specification indicated two paragraphs before that the excess material had already been removed. '689 Patent, col.5, ll. 59-60. Accordingly, the alternative embodiment must propose an alternative to at least the preceding three paragraphs, as it must propose an alternative way to bond the cut elements to the fabric without also bonding the excess material. Given the context, it is plain that the alternative embodiment proposes ejecting the elements from the cutter and leaving the waste material behind, leaving the cut elements free to then be bonded to the fabric.

To be sure, the alternative embodiment provides no additional detail about how the bonding takes place, or how the cut elements are held in place during bonding. There is no indication, however, that it contemplates a method in which there is material between the elements during the bonding process. Accordingly, the alternative embodiment sufficiently supports claims 15 and 22 of the '689 Patent, as construed to require empty spaces between the elements during bonding.

Turning to the accused process, there is a genuine dispute of material fact as to whether the Finn Tech process meets the limitation in claims 15 and 22 requiring empty spaces between the element. Specifically, Nike contends that the mere presence of excess material in between the elements during the bonding process is sufficient to exclude the accused process, whereas McDavid point out that, during bonding, the elements stand proud from the excess material, and argues that the voids at the top of the elements are sufficient to meet the limitation. (*See* Dkt. No. 443 ("Pl.'s

Resp. Def.'s SMF") ¶ 16. That disputed factual question must be resolved at trial, so summary judgment in favor of McDavid is inappropriate.

II.     Additional Discovery Under Fed. R. Civ. P. 56(d)

As part of its reply, McDavid included a "Rule 56(d) Declaration" attempting to show that additional discovery is necessary before the court can rule on McDavid's motion for summary judgment because of Nike's indication that Sabrina, rather than Finn Tech, is now manufacturing foam pads for Nike. (Dkt. No. 443, Ex.1.) Rule 56(d) allows a nonmovant to request additional discovery or delay ruling on a summary judgment motion. Fed. R. Civ. P. 56(d). Because McDavid is the movant, the rule has no application. If additional discovery is necessary, McDavid may move to reopen discovery prior to trial.

## CONCLUSION

For the reasons explained above, McDavid's "Motion for Summary Judgment of Infringement of U.S. Reissue Patent RE 42,689" (Dkt. No. 370) is denied. Counsel and the parties are encouraged to discuss settlement. The court will set future dates at the hearing on Nike's proposed schedule set for 9:00 am on March 8, 2012.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 5, 2012