IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MCDAVID, INC., and STIRLING MOULDINGS LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 C 6584 |
| NIKE USA, INC., | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Currently pending before the court is defendant Nike USA Inc.'s motion to strike portions of plaintiff McDavid, Inc.'s supplemental expert opinions that were served on March 22, 2013, pursuant to the schedule set on December 23, 2012. (Dkt. No. 563.) Nike's motion (Dkt. No. 581) contends that the supplemental reports of McDavid's experts Glenn Beall and James McGovern improperly articulate additional theories that were not disclosed in their earlier reports.

Federal Rule of Civil Procedure 26(a)(2) requires the disclosure of expert reports, and Rule 26(e)(1)(A) requires that those reports be updated "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." The Rules secure compliance with these provisions by providing in Rule 37 that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless,

permitted to use as evidence at a trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

The Seventh Circuit has stated that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (citation and quotation marks omitted). The district court should consider the following factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date" in exercising the district court's broad discretion to determine if a sanction is warranted."

I.  McDavid's Expert Glenn Beall

Nike argues first that McDavid's expert Glenn Beall added an additional theory of infringement in the supplementation of his report. According to Nike, the new theory is that the presence of "cage" material inside the spaces between the elements in Nike's accused process does not preclude infringement under the doctrine of equivalents for claim 22 of the '346 Patent, which states that the elements are held "with spaces between the elements." '346 Patent col.8 ll.64-65.

McDavid does not contest that this additional theory was not in Beall's prior expert reports. McDavid notes, however, that Beall advanced the theory that the "cage" material does not preclude *literal infringement* of claim 22 in his declaration supporting McDavid's opposition to Nike's motion for summary judgment of non-infringement of the '346 Patent. (Dkt. No. 288.) In that declaration, filed on November 19, 2010, Beall stated:

> 8. Some of the Nike Pro Combat products have at least one padding array of elements that includes a foam cage placed between some of the elements. From

my personal inspection of the Pro Combat products and from review of the Finn Tech manufacturing manual, the cages have a height that is less than the height of the individual elements, and the cage occupies only a portion of the volume between the elements. (Ex. A, Finn Tech Manufacturing Manual at 7-8.) Accordingly, the cages do not fill the entire space between the elements, nor are the cages located between all of the elements of a padding array.

9. One of ordinary skill in the art would understand that the entire space between the elements need not be completely empty for the resulting product to achieve the desired flexibility. For example, the padding arrays of some Nike Pro Combat shorts (e.g., Style 369261), that contain a foam cage between some of the elements, retain flexibility in each direction. The foam cages are not bonded to either of the fabrics and are not connected to the individual elements, and therefore "float" between the elements. Moreover, the foam cages have a height that is less than the elements and are not located between all of the elements. Thus, there are no spaces between the elements that are entirely filled, and every space between every element is at least partially empty. Moreover, every padding array of the Pro Combat products has more than a plurality of elements that have no cage between the elements and therefore have completely empty space between those elements.

(Dkt. No. 315 ¶¶ 8-9.) The cited paragraphs disclose Beall's theory that claim 22 is literally infringed, despite the cage material in the spaces between the elements. McDavid thus argues that, even assuming it has violated Rule 26(e)(1) by failing to update Beall's report in a timely manner, Nike has known about Beall's essential contentions with respect to the cage elements since at least November 2010, approximately two and a half years ago. According to McDavid, Nike will thus suffer no significant prejudice from Beall's supplementation of his report, particularly after it has the opportunity to depose Beall on his supplementation before trial.

The problem with McDavid's argument, however, is that the court granted summary judgment for Nike on the issue of literal infringement of claim 22 of the '346 Patent on August 17, 2011. (Dkt. No. 344.) The only issue left in the case with respect to claim 22 of the '346 Patent after that date was infringement under the doctrine of equivalents. Nike would have no reason to continue to pay attention to Beall's expert report with respect to literal infringement after the literal infringement issue had been resolved in Nike's favor. It is thus unreasonable to

assume that Nike would have inferred that McDavid intended to advance the same argument with respect to the doctrine of equivalents, in the absence of any indication from McDavid's expert Beall that he would opine about infringement of the "with spaces" element of claim 22 under the doctrine of equivalents. McDavid's assertion of Beall's theory with respect to the doctrine of equivalents on March 22, 2013, shortly before trial, leaves Nike a short time to develop its response. McDavid's delay in presenting Beall's opinion of infringement under the doctrine of equivalents until such a late hour is thus highly prejudicial to Nike.

Moreover, McDavid provides no explanation for its delay. Instead, it asserts that it disclosed Beall's theory regarding infringement of the "with spaces" element under the doctrine of equivalents in Beall's supplemental reports filed with respect to the '689 Patent and the '411 Patent in the summer of 2012. (*See* Dkt. No. 594, at 8-9.) McDavid contends that, because the "with spaces element" is identical in the '346 Patent, the '689 Patent, and the '411 Patent, Beall's reports on the '689 and '411 Patents were sufficient to disclose the same theory with respect to the '346 Patent.

The court disagrees. Parties may assert different arguments with respect to different patents in patent litigation for a variety of reasons. The only thing that patent litigants can rely on to discern their opponent's arguments is the opposing party's disclosure of expert reports and contentions. Indeed, this district's local patent rules, along with Rule 26, exist precisely to encourage such disclosures at an early stage of the litigation. Nike had no reason to believe that just because McDavid asserted a particular argument with respect to the '689 and '411 Patents, that McDavid would assert the same argument with respect to the '346 Patent. Indeed, Beall's disclosures of his caged material theory with respect to the '689 and '411 Patents in the summer of 2012 makes it all the more inexplicable and inexcusable that he failed to disclose the same

4

theory with respect to the '346 Patent until March 22, 2013. Accordingly, the court will strike Beall's supplemental expert report of March 22, 2013 on the basis that (1) there is prejudice to Nike that (2) it reasonably cannot be expected to cure within the time left before trial (3) without disruption of the trial, and (4) the court finds that McDavid acted in bad faith when it failed to disclose Beall's opinion in his March 22, 2013 report as to the '346 Patent at a substantially earlier date, such as when Beall reported that opinion as to the '689 and '411 Patents.

II.     McDavid's expert James McGovern

Next, Nike contends that McDavid's expert James McGovern improperly added an "alternative theory" for calculating a reasonable royalty in his supplemental report of March 22, 2013. Previously, McGovern's expert reports included the entire market value of the allegedly infringing products in the base used to calculate a reasonable royalty. (Dkt. No. 582, Ex. C-F.) The new report, however, articulates an alternative theory for apportioning the value of Nike's sales of the allegedly infringing products between the features resulting from the accused process and other features of the product. (Dkt. No. 581, Ex. B, at 72-76.) Under McGovern's alternative theory, he opines that only 65% of Nike's sales of the allegedly infringing product should be included in the base used to calculate a reasonable royalty. (*Id.* at 73.)

McDavid, as with Beall's March 22, 2013 report, does not contend that McGovern's previous reports disclosed McGovern's alternative theory. Instead, McDavid contends that two subsequent changes justify allowing McGovern now to present the new theory set out in his March 22, 2013 report. First, McDavid contends that new facts have come to light, including additional sales information from Nike about the accused products. Accordingly, McDavid asserts that "the alternative calculation is prompted by and based on Nike's 2 and 1/2 years of

5

increased sales with flattened sales for Plaintiffs, as well as new market share and sales information." (Dkt. No. 594, at 12.)

McDavid does not explain, however, how the additional information necessitates McGovern's new theory of damages. The law provides that the use of the entire market value to calculate a royalty is appropriate when "the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (citation, quotation marks, and alteration omitted). Without further explanation from McDavid, the court does not see why the additional sales data just recently made McDavid aware of the possibility that it could not satisfy the entire market value rule. To the contrary, the entire market value rule is often hotly contested in patent litigation, and McDavid should have been aware of the necessity of McGovern disclosing his opinion based on his alternative theory two and a half years ago with the sales data that McGovern had at the time. McGovern's failure to provide such a disclosure until March 22, 2013, is a violation of Rule 26(e)(1).

Next McDavid contends that Federal Circuit law regarding the entire market value rule has changed so as to justify McGovern's new theory. Specifically, it points to the Federal Circuit's comment *in Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338-39 (Fed. Cir. 2009), that, "[s]imply put, the base used in a running royalty calculation can always be the value of the entire commercial embodiment, as long as the magnitude of the rate is within an acceptable range." McDavid contends that statement meant that it was "always" appropriate to use the entire market value to calculate a reasonable royalty, regardless of the percentage of market value attributable to the infringing element of the accused product, so long as the royalty rate is low enough. Subsequently, the Federal Circuit in *Uniloc* clarified that the above-quoted

statement in its *Lucent* opinion does not mean what McDavid asserts. McDavid contends that this clarification was a change in the law justifying McGovern's development of his alternative theory of damages in this case.

After clarifying the statement in *Lucent*, however, the Federal Circuit in *Uniloc* explained that the law regarding the entire market value rule had not changed in *Lucent* or subsequently. To the contrary, the law has remained consistent, as shown by *Lucent* itself and a number of pre-*Lucent* cases:

> The Supreme Court and this court's precedents do not allow consideration of the entire market value of accused products for minor patent improvements simply by asserting a low enough royalty rate. *See Garretson,* 111 U.S. at 121, 4 S. Ct. 291; *Lucent Techs.,* 580 F.3d at 1336 ("In one sense, our law on the entire market value rule is quite clear. For the entire market value rule to apply, the patentee *must* prove that the patent-related feature is the basis for customer demand" (emphasis added, internal citations omitted)); *Rite–Hite,* 56 F.3d at 1549 (same); *Bose Corp. v. JBL, Inc.,* 274 F.3d 1354, 1361 (Fed. Cir. 2001) (same); *TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 901 (Fed. Cir. 1986) ("The entire market value rule allows for the recovery of damages based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand.").

*Uniloc*, 632 F.3d at 1320. There was thus no change in the law justifying McDavid's delay until March 22, 2013, in disclosing McGovern's new alternative opinion.

Moreover, the court determines that it would be prejudicial to require Nike to respond to McGovern's new damages theory at this late stage of the litigation. Accordingly, the court will strike the portions of McGovern's supplemental expert report that deal with McGovern's alternative damages theory. (Dkt. No. 581, Ex. B.)

Nike also objects to McGovern's new conclusion that Nike may have expanded the relevant market through its sale of infringing products. (*Id.* at 22.) McGovern may fairly have come to that new conclusion only after examining new sales data from the last two and a half years, however, so the court declines to strike McGovern's opinion on that point.

7

Next, Nike objects to McGovern's reliance on a license agreement between McDavid and Cutter to support his reasonable royalty opinion. (*Id.* at 43-46.) That agreement became available after McGovern's last expert report. McGovern's comments on it are an appropriate supplementation of his earlier reports. Nike argues that McGovern's new opinion nevertheless relies on a new methodology that McGovern did not use to analyze previous license agreements. The court believes that McGovern's use of a new methodology is insufficient to justify striking the opinion, however. It may be the case that the Cutter/McDavid license has unique features requiring McGovern's new methodology for an accurate assessment. That question can be tested on cross examination by Nike's counsel at trial, and, if there is no such justification, may well undermine McGovern's credibility before the jury. Any prejudice to Nike is therefore limited. Consequently, the court declines to strike McGovern's reliance on the McDavid/Cutter agreement.

Finally, Nike moves to strike certain evidence in McGovern's supplemental report "that was available years ago at the time of his original reports," such as e-mails and deposition testimony regarding the use of McDavid's products by NBA stars at the 2008 NBA All-Star Game. (Dkt. No. 581, at 7.) None of these individual pieces of evidence amount to an entirely new theory that will require Nike to devote significant time or resources to prepare a response. Moreover, much of the new evidence originated from Nike, so Nike has been aware of that evidence for a sufficient amount of time. In that circumstance, the court declines to strike the new evidence McGovern has included in his supplemental report. The court expresses no opinion on whether the additional evidence McGovern cites is admissible, or whether it may otherwise be disclosed to the jury under Fed. R. Evid. 703. Both of those issues will be resolved, if necessary, at trial.

CONCLUSION

For the reasons explained above, Nike's motion to strike portions of McDavid's expert reports (Dkt. No. 581) is granted in part and denied in part, as follows: (1) The court strikes Beall's supplemental expert report of March 22, 2013, in its entirety; and (2) the court strikes the portions of McGovern's supplemental expert report of March 22, 2013, dealing with McGovern's alternative damages theory apportioning the value of Nike's sales of the allegedly infringing products between the features resulting from the accused process and other features of the product. (Dkt. No. 581, Ex. B.) Nike may depose McGovern, if it desires, on a mutually agreeable date on or before 5/3/13. Nike's 26(e)(2) supplementation is due 5/13/13. All other dates set on 11/27/12 (Dkt. No. 559) remain in effect, including that the Final Pretrial Order must be submitted to the court through the Proposed_Order_Holderman@ilnd.uscourts.gov e-mail address by 5/21/13.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 23, 2013